[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10789

_____

D.C. Docket No. 1:15-cr-00158-CG-B-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRANCE TYRONE DAVIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(November 7, 2017)

Before ED CARNES, Chief Judge, ROSENBAUM, and HIGGINBOTHAM,[*] Circuit Judges.

ED CARNES, Chief Judge:

---

[*] Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, sitting by designation.

This is an ACCA "violent felony" issue case.  So here we go down the rabbit hole again to a realm where we must close our eyes as judges to what we know as men and women.  It is a pretend place in which a crime that the defendant committed violently is transformed into a non-violent one because other defendants at other times may have been convicted, or future defendants could be convicted, of violating the same statute without violence.  Curiouser and curiouser it has all become, as the holding we must enter in this case shows.  Still we are required to follow the rabbit.

## I.  FACTS AND PROCEDURAL HISTORY

Terrance Tyrone Davis was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Based in part on his prior Alabama conviction for first degree sexual abuse, the district court enhanced his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e).  That law establishes a mandatory minimum sentence of 15 years for defendants convicted of violating § 922(g) who have at least three prior convictions for violent felonies or serious drug offenses.  Davis contends that under Alabama law, first degree sexual abuse does not qualify as a violent felony for ACCA purposes.

In 2012 Davis was indicted in Alabama state court for first degree rape.  The indictment stated that "Davis . . . , a male, did engage in sexual intercourse with [the victim], a female, by forcible compulsion, in violation of [Alabama's first

2

degree rape statute]." He pleaded guilty to the lesser included felony offense of first degree sexual abuse, in violation of Alabama Code § 13A-6-66, instead of the rape charge.

In 2015 Davis was again convicted, this time for being a felon in possession of a firearm. The presentence investigation report determined that he was an armed career criminal based on three earlier convictions: (1) a 1998 conviction for third degree robbery, in violation of Alabama Code § 13A-8-43; (2) a 2003 conviction for second degree assault, in violation of Alabama Code § 13A-6-21; and (3) the 2012 conviction for first degree sexual abuse, in violation of Alabama Code § 13A-6-66. Based in part on its determination that Davis was an armed career criminal, the PSR calculated a total offense level of 31 and a criminal history category of VI, yielding an advisory guidelines range of 188 to 235 months imprisonment.

Davis objected to using his sexual abuse conviction to enhance his sentence under the ACCA, contending that based on the Supreme Court's decision in Johnson v. United States, 559 U.S. 133, 130 S. Ct. 1265 (2010), it does not qualify as a violent felony. Over his objection, the district court concluded that the conviction does categorically qualify as a violent felony and the court treated him as an armed career criminal subject to the 15-year mandatory minimum sentence.

3

Davis was sentenced to 188 months, which was eight months above the mandatory minimum and at the low end of his advisory guidelines range.

## II.  THE ACCA FRAMEWORK

Under the ACCA, a defendant who is convicted of being a felon in possession of a firearm is subject to a 15-year mandatory minimum sentence if he has three prior convictions "for a violent felony or a serious drug offense."  18 U.S.C. § 924(e)(1).  The ACCA defines a violent felony as any crime punishable by a term of imprisonment exceeding one year that:

> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii)   is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. § 924(e)(2)(B).  This case involves only the first part of that definition, § 924(e)(2)(B)(i), which is known as the elements clause.

"Whether a particular conviction is a violent felony for purposes of the ACCA is a question of law we consider de novo."  United States v. Gundy, 842 F.3d 1156, 1160 (11th Cir. 2016).  The answer here depends on whether one of the elements required by the statute of conviction is "the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  If so, the conviction qualifies as a violent felony; if not, it doesn't.

4

To determine whether the statute of conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), we are confined to looking at the fact of conviction and the elements required for conviction. United States v. Hill, 799 F.3d 1318, 1322 (11th Cir. 2015); United States v. Braun, 801 F.3d 1301, 1303 (11th Cir. 2015); United States v. Estrella, 758 F.3d 1239, 1249 n.4 (11th Cir. 2014); see also Taylor v. United States, 495 U.S. 575, 600, 110 S. Ct. 2143, 2159 (1990). "All that counts . . . are the elements of the statute of conviction," not the "specific conduct of [a] particular offender." Mathis v. United States, 579 U.S. __, 136 S. Ct. 2243, 2251–52 (2016) (quotation marks omitted).

We apply federal law in interpreting the ACCA, but state law in determining the elements of state offenses, keeping in mind that state law is what the state supreme court says that it is. Johnson, 559 U.S. at 138, 130 S. Ct. at 1269 (explaining that when deciding whether a prior conviction is a "violent felony" under the ACCA, "[w]e are . . . bound by [state courts'] interpretation of state law, including its determination of the elements of [the statute of conviction]"); Braun, 801 F.3d at 1303 ("We are bound by federal law when we interpret terms in the ACCA, and we are bound by state law when we interpret the elements of state-law crimes."); Estrella, 758 F.3d at 1249 n.4 (explaining that "the question we are answering here is whether those elements as defined by state law, including state

5

court decisions," qualify for a federal sentence enhancement); United States v. Rosales–Bruno, 676 F.3d 1017, 1021 (11th Cir. 2012) ("[W]e look to [state] case law to determine whether a conviction under [a state statute] necessarily involves the employment of 'physical force' as that term is defined by federal law.").

The Supreme Court has held that we must first employ what is known as the "categorical approach." Hill, 799 F.3d at 1322. Under that approach, regardless of what the true facts are, "we presume that the state conviction rested upon the least of the acts criminalized by the statute . . . ." Esquivel-Quintana v. Sessions, 581 U.S. __, 137 S. Ct. 1562, 1568 (2017) (alterations and quotation marks omitted); see, e.g., Braun, 801 F.3d at 1307. And then we must decide if the least of the acts criminalized includes the use, attempted use, or threatened use of physical force against another person, 18 U.S.C. § 924(e)(2)(B)(i). If not, that is the end of our inquiry and the prior conviction does not count as a violent felony under the elements clause.

The inquiry is more complicated when the statute of conviction makes multiple acts criminal, if there are multiple ways to commit the crime that the statute defines. If that is so, as it often is, we have to determine whether the statute is indivisible, meaning that it includes multiple ways of committing the same offense, or is instead divisible, meaning that it lists multiple offenses. Mathis, 136 S. Ct. at 2249. If the statute is indivisible, we use the categorical approach. In that

case a conviction under it qualifies as a violent felony only if all of acts criminalized in the statute involve the use of physical force against the person of another.

But if the statute is divisible, we employ a modification of the categorical approach, aptly known as the "modified categorical approach," to determine "which crime in the statute formed the basis of the defendant's conviction." Gundy, 842 F.3d at 1162.  Under the modified categorical approach, we can look at certain judicial records, such as the indictment or the plea colloquy, in order to determine which of the multiple crimes listed in the statute the defendant was convicted of committing.  Shepard v. United States, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263 (2005).  If we can tell "which statutory phrase the defendant was necessarily convicted under," United States v. Howard, 742 F.3d 1334, 1345 (11th Cir. 2014), we return to the categorical approach and apply it to that statutory phrase.  Doing so requires us to decide whether the least of the acts criminalized by that statutory phrase (instead of whether all of the acts criminalized by all of the statutory phrases) includes the use, attempted use, or threatened use of physical force against another person, as required by the ACCA's elements clause, 18 U.S.C. § 924(e)(2)(B)(i).  The Supreme Court has held that the "physical force" that the elements clause requires is "violent force — that is, force capable of

7

causing physical pain or injury to another person." Johnson, 559 U.S. at 140, 130 S. Ct. at 1271.

The question we face in this appeal is whether Alabama's first degree sexual abuse statute, as interpreted by the Alabama Supreme Court, necessarily includes as an element the use, attempted use, or threatened use of violent physical force.

### III.  DIVISIBILITY OF FIRST DEGREE SEXUAL ABUSE

Alabama Code § 13A-6-66(a), which is the statute Davis was convicted of violating, provides:

> A person commits the crime of sexual abuse in the first degree if:
>
> (1) He subjects another person to sexual contact by forcible compulsion; or
>
> (2) He subjects another person to sexual contact who is incapable of consent by reason of being physically helpless or mentally incapacitated.

Ala. Code § 13A-6-66(a).  Because the statute lists multiple acts that each qualify as a crime, we must first determine if the statute is divisible or indivisible.

There are three methods for determining whether a statute is divisible.  See Gundy, 842 F.3d at 1163.  First, "the statute on its face may resolve the issue."  Id. (quotation marks omitted).  Second, "[i]f a precedential state court decision makes clear that a statute's alternative phrasing simply lists alternative methods of committing one offense, such that a jury need not agree on which alternative method the defendant committed in order to sustain a conviction, then the statute is

8

not divisible." Id. (quotation marks omitted).  And third, "if state law fails to provide clear answers, federal judges [may look at] the record of a prior conviction itself. . . .  for the sole and limited purpose of determining whether the listed items are elements of the offense." Id. (quotation marks omitted).

On its face § 13A-6-66(a) lists two separate crimes:  sexual abuse by forcible compulsion and sexual abuse of a person incapable of consent by reason of being physically helpless or mentally incapacitated.  As a result, we turn to the modified categorical approach to determine which of those crimes Davis was convicted of committing.  See id. at 1162.

It is clear from Davis' plea colloquy that he was convicted of sexual abuse by forcible compulsion.  When Davis pleaded guilty to first degree sexual abuse, the prosecutor described the factual basis of the plea as follows:

> [T]he State would expect to show that on or about March 5th of 2011 here in Mobile County the victim who was 17 years of age entered the defendant's apartment.  And while she was in his apartment the defendant assaulted her and during the assault he placed his hands on her vaginal area, that a witness — well, she was able to leave and the witness observed her leaving.  And she was sent to USA Children's and Women Hospital.

And Davis agreed with the State's recounting of those facts.  There is nothing in the plea record or elsewhere to indicate that the victim was physically helpless or mentally incapacitated as those terms are defined in the Alabama Code.  See Ala. Code § 13A-6-60(6) (defining mental incapacitation as being "temporarily

9

incapable of appraising or controlling his conduct owing to the influence of a narcotic or intoxicating substance administered to him without his consent, or to any other incapacitating act committed upon him without his consent"); id. § 13A-6-60(7) (defining physical helplessness as being "unconscious or for any other reason . . . physically unable to communicate unwillingness to an act").  We conclude, as the district court did, that Davis was convicted of sexual abuse by forcible compulsion, in violation of § 13A-6-66(a)(1).

Davis contends that sexual abuse by forcible compulsion under § 13A-6-66(a)(1) is itself divisible.  Under Alabama law, sexual abuse by forcible compulsion requires that the defendant have (1) subjected a person (2) to sexual contact (3) by forcible compulsion.  Ala. Code § 13A-6-66(a)(1).  Davis argues that, based on Alabama case law, the element of forcible compulsion can be satisfied in "multiple ways," making it divisible.  He is right in his premise but wrong in his conclusion.

The Alabama Code defines forcible compulsion as "[p]hysical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person." Id. § 13A-6-60(8).  Broken down, that definition describes three ways a jury could find that a defendant used forcible compulsion:  (1) physical force that overcomes earnest resistance; (2) an express threat that places a person in fear of immediate

death or serious physical injury; or (3) an implied threat that places a person in fear of immediate death or serious physical injury. See id.

The fact that there are three ways of satisfying the forcible compulsion element does not, however, make forcible compulsion divisible. If "[the] jury need not agree on which alternative method the defendant committed in order to sustain a conviction, then the statute is not divisible." Gundy, 842 F.3d at 1163 (quotation marks omitted). And under Alabama case law, the jury does not need to agree on which type of forcible compulsion a defendant used in order to convict him of sexual abuse by forcible compulsion. See Powe v. State, 597 So. 2d 721, 726–28 (Ala. 1991) (addressing the three types of forcible compulsion to determine whether there was sufficient evidence to convict the defendant under at least one type). Sexual abuse by forcible compulsion is not itself divisible, so we use the categorical approach to determine whether it qualifies as a violent felony under the ACCA.

## IV.  CATEGORICAL ANALYSIS OF SEXUAL ABUSE BY FORCIBLE COMPULSION

The Alabama Code defines sexual abuse by forcible compulsion as simply "subject[ing] another person to sexual contact by forcible compulsion." Ala. Code § 13A-6-66(a)(1). "Sexual contact" is defined as "[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party," id. § 13A-6-60(3), and "forcible

11

compulsion" is defined as "[p]hysical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person," id. § 13A-6-60(8).[1] We must determine whether those definitions necessarily include the use, attempted use, or threatened use of violent force against another person. 18 U.S.C. § 924(e)(2)(B)(i); Johnson, 559 U.S. at 140, 130 S. Ct. at 1271.

The sexual contact element of sexual abuse by forcible compulsion cannot satisfy the elements clause's "physical force" requirement because it does not require any "violent force." See Johnson, 559 U.S. at 139–40, 130 S. Ct. at 1269–71 (emphasis omitted). Because sexual contact, as defined by § 13A-6-60(3), can be satisfied by "[a]ny touching," or what the Supreme Court in Johnson termed "merest touching," 559 U.S. at 139, 130 S.Ct. at 1270, it cannot satisfy the physical force requirement. That leaves only the forcible compulsion element to supply the missing requirement.

The forcible compulsion element appears to require either the use, attempted use, or threatened use of violent force. The statute defines "forcible compulsion" as physical force that overcomes earnest resistance, an express threat that places a person in fear of immediate death or serious physical injury, or an implied threat

---

[1] "The definition of the term 'forcible compulsion' as an element is the same regardless of whether the offense charged is for first-degree rape, first-degree sodomy, or first-degree sexual abuse." Ex parte Williford, 931 So. 2d 10, 14 n.7 (Ala. 2005). For that reason we can and do rely on Alabama decisions addressing rape by forcible compulsion and sodomy by forcible compulsion as well as those addressing sexual abuse by forcible compulsion.

12

that places a person in fear of immediate death or serious physical injury. Ala. Code § 13A-6-60(8). "Serious physical injury" is defined as "[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ." Id. § 13A-1-2(14). One would expect that a threat to inflict those types of injuries qualified as a threat of physical force. That is how we would interpret the statute. The problem, as Davis points out, is that some Alabama decisions interpret the implied threat alternative element in a way that waters it down.

The first of those is the Alabama Supreme Court's Powe decision. See 597 So. 2d at 722. The defendant, a 40-year-old man, was convicted of first degree rape of his 11-year-old daughter, N.S., by forcible compulsion in violation of Alabama Code § 13A-6-66. He had told N.S. to lie on top of him, which she did, and he then put his penis in her vagina. Id. at 723, 728. Although N.S. testified that she was afraid of her father, she also testified that he "did not expressly threaten her before or during the incident." Id. at 723. There was no evidence that the defendant used physical force, which left the court to determine whether the rape had been committed using an implied threat of physical force that placed N.S. in fear of serious physical injury or death. Id. at 726; see Ala. Code §§ 13A-6-66, 13A-6-60(8).

13

In deciding that the facts in Powe were sufficient to prove that the defendant had committed the crime of rape by forcible compulsion in violation of § 13A-6-66(a)(1), the Alabama Supreme Court discussed several decisions by other state supreme courts.  One of those decisions, State v. Etheridge, 352 S.E.2d 673 (N.C. 1987), had "[held] that a child's general fear of a parent can suffice as the force necessary to commit a forcible sexual assault."  Powe, 597 So. 2d at 726 (citing Etheridge, 352 S.E.2d at 682).  The North Carolina Supreme Court had explained that "[t]he child's knowledge of his father's power may alone induce fear sufficient to overcome his will to resist, and the child may acquiesce rather than risk his father's wrath."  Id. at 726–27 (quoting Etheridge, 352 S.E.2d at 681–82).

The Alabama Supreme Court in Powe also looked to a decision of the Pennsylvania Supreme Court that had "[held] that the term 'forcible compulsion,' as used in Pennsylvania's rape statute, includes not only physical force or violence but also moral, psychological, or intellectual force used to compel a person to engage in sexual intercourse against that person's will."  Powe, 597 So. 2d at 727–28 (citing Commonwealth v. Rhodes, 510 A.2d 1217, 1226 (Pa. 1986)).  The Pennsylvania Supreme Court had reasoned that:

> There is an element of forcible compulsion . . . inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the

14

performance of sexual acts.  This is especially so where the child knows and trusts the adult.  In such cases, forcible compulsion . . . derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult . . . <u>without the use of physical force or violence or the explicit threat of physical force or violence</u>.

Id. (quoting Rhodes, 510 A.2d at 1227) (second and third alternation in original) (emphasis added).

The Alabama Supreme Court in Powe noted that "[a]lthough there is authority from other jurisdictions refusing to apply reasoning similar to that employed in [Etheridge and Rhodes], we find the reasoning applied in Etheridge and Rhodes to be the most logical."  Id. at 728 (citation omitted).  It concluded that "a jury could reasonably infer that Powe held a position of authority and domination with regard to his daughter sufficient to allow the inference of an implied threat to her if she refused to comply with his demands."  Id.  The court explained that its holding was:

limited to cases concerning the sexual assault of children by adults with whom the children are in a relationship of trust.  The reason for the distinction between cases involving children as victims and those involving adults as victims is the great influence and control that an adult who plays a dominant role in a child's life may exert over the child.  <u>When a defendant who plays an authoritative role in a child's world instructs the child to submit to certain acts, an implied threat of some sort of disciplinary action accompanies the instruction.</u>  If the victim is young, inexperienced, and perhaps ignorant of the "wrongness" of the conduct, <u>the child may submit to the acts because the child assumes that the conduct is acceptable or because the child does not have the capacity to refuse.</u>  Moreover, <u>fear of the parent resulting from love or respect may play a role as great as or greater</u>

15

than that played by fear of threats of serious bodily harm in coercing a child to submit to a sexual act.

Id. at 728–29 (emphasis added).

Davis contends that the Powe decision shows that an Alabama conviction for sexual abuse by forcible compulsion does not necessarily include as an element the use, attempted use, or threatened use of physical force against the person of another.[2]  Reluctantly, we agree.  Despite the statutory language requiring an express or implied threat of "serious physical injury," the Powe decision indicates that where the victim is a child and the defendant is an authority figure in that child's life "an implied threat of some sort of disciplinary action" can be sufficient to support a conviction for sexual abuse by forcible compulsion even without evidence that the defendant expressly or impliedly threatened serious physical

---

[2] Because Davis did not cite the Powe decision in the district court when arguing that his first degree sexual abuse conviction did not qualify as a violent felony under the ACCA's elements clause, the government contends that we ought to review "[the] portion of Davis's argument . . . built upon Powe" only for plain error.  After all, a defendant who fails to make a "specific objection[ ] or argument[ ] . . . in the district court" forfeits that objection or argument, and we review the issue only for plain error.  United States v. Weeks, 711 F.3d 1255, 1261 (11th Cir. 2013); United States v. Massey, 443 F.3d 814, 819 (11th Cir. 2006).

But the same is not true of a defendant's failure to cite specific decisions supporting an objection or argument.  See United States v. Irey, 612 F.3d 1160, 1215 n.33 (11th Cir. 2010) (en banc) (rejecting the suggestion that "we should not consider [certain] decisions of the Supreme Court and this Court . . . . [because] they were not cited in the district court.  No member of this Court . . . has ever before suggested that in determining the law we ought to confine ourselves to the decisions that were cited in the district court.  We, like all courts, have a duty to find and apply the correct law").  Once a defendant has sufficiently raised an issue for the district court's consideration, he has preserved the issue for appeal.  We do not require defendants raising an issue in the district court to cite every decision that could support their position on that issue if it arises on appeal.  Davis preserved his argument in this case by objecting to the use of his first degree sexual abuse conviction on the ground that it does not qualify as a violent felony under the ACCA's elements clause.

16

injury or death.  Id. at 729.  Not all disciplinary actions involve violent force, that is, force capable of causing physical pain or injury.

The government contends that Powe "has no application here" because that decision is "narrow and fact-confined."  Even so, the Supreme Court requires that we are to "presume that the state conviction rested upon the least of the acts criminalized by the statute," Esquivel-Quintana, 137 S. Ct. at 1568 (alterations and quotation marks omitted).  And the least of the acts criminalized by § 13A-6-66(a)(1) is described in the Powe decision as an implicit threat not of violence but of "some sort of disciplinary action," or taking advantage of a child who "assumes that the conduct is acceptable or because the child does not have the capacity to refuse."  See Powe, 597 So. 2d at 728–29.  Violent force is not necessary for any of those ways of violating § 13A-6-66, much less for all of them.

The government argues that most of the language in the Powe decision is mere dicta that is not binding on Alabama courts or federal courts.  See Edwards v. Prime, Inc., 602 F.3d 1276, 1298 (11th Cir. 2010) ("[D]icta is not binding on anyone for any purpose.").  The government argues that the Powe decision's actual holding is that where there is evidence the child victim was afraid of the defendant, who is an adult in a position of domination and control over the child, a jury can consider their relationship in finding that the defendant used forcible compulsion.

17

The Powe opinion does contain some dicta, as many opinions do.  See Evans v. Stephens, 407 F.3d 1272, 1292–93 (11th Cir. 2005) (Carnes, J., concurring) ("Indeed, when one looks for it, dicta appears to be scattered across the opinions of this Court like wildflowers in a spring meadow.").  For example, the Alabama Supreme Court wrote that "[i]f the victim is young, inexperienced, and perhaps ignorant of the 'wrongness' of the conduct, the child may submit to the acts because the child assumes that the conduct is acceptable."  Powe, 597 So. 2d at 729.  But there were no facts in the Powe decision indicating that the victim submitted because she thought the conduct was acceptable.  See id. at 722–23.  Instead, the facts supporting the finding of forcible compulsion were that the 40-year-old defendant was the 11-year-old victim's father, they lived in the same house, the victim was afraid of him, and they were alone in the house when he sexually abused her.  Id. at 723, 728.  So the Powe decision's discussion of a victim submitting due to a mistaken belief that the conduct is acceptable is unquestionably dicta.

It is less clear whether the Powe decision's discussion of "an implied threat of some sort of disciplinary action" is dicta.  The decision does not say what the victim feared from her father — it could have been physical force or something less.  See id. at 723, 729.  There are all kinds of parental disciplinary actions that do not involve physical force.  And even if that language in Powe is dicta, a later

18

decision by the Alabama Supreme Court makes clear that a jury can find that the defendant used forcible compulsion for purposes of § 13A-6-66(a) even in the absence of any use, attempt to use, or threat of using physical force.

In Higdon v. State, 197 So. 3d 1019, 1020 (Ala. 2015), the defendant was a 17-year-old intern at a day care facility.  He performed oral sex on a 4-year-old student and was convicted of first degree sodomy by forcible compulsion.  Id. Even though there was no evidence that the child feared him in any way, see id., the Alabama Supreme Court held that the Powe decision applied and explained that:

> [R]egardless of the defendant's age, when determining as a matter of law the sufficiency of the evidence of an implied threat from which a jury may infer the element of forcible compulsion, the trial court may consider from the child victim's perspective, among other factors, the difference in age or physical maturity between the defendant and the child victim and the defendant's conduct and exercise of a position of authority or control over the child victim.

Id. at 1022 (emphasis omitted).

Under the Higdon decision, forcible compulsion for purposes of § 13A-6-66(a) does not require the use, attempted use, or threatened use of physical force against another person.  Although the Higdon decision was issued in 2015, several years after Davis was convicted in 2011 of first degree sexual abuse, it still controls our analysis of the elements of the state statute.  "A judicial construction of a statute is an authoritative statement of what the statute meant

19

before as well as after the decision of the case giving rise to that construction."

Rivers v. Roadway Exp., Inc., 511 U.S. 298, 312–13, 114 S. Ct. 1510, 1519 (1994)

(footnote omitted); see also United States v. Seabrooks, 839 F.3d 1326, 1344 (11th

Cir. 2016) ("When the [state supreme court] interprets [a state] statute, it tells us

what that statute always meant."). The Higdon decision is a statement of what the

sexual abuse by forcible compulsion statute meant at the time Davis was convicted

of violating § 13A-6-66.[3]

The Alabama Supreme Court's interpretation of forcible compulsion means

that Alabama's statute defining sexual abuse by forcible compulsion does not

categorically include as an element the use, attempted use, or threatened use of

physical force, as that term is defined by federal law. See 18 U.S.C.

§ 924(e)(2)(B)(i); Johnson, 559 U.S. at 140, 130 S. Ct. at 1271. As a result, the

district court erred in concluding that Davis' Alabama conviction for first degree

sexual abuse was a violent felony under the ACCA's elements clause. [4]

---

[3] The Higdon decision did overrule another Alabama Supreme Court decision interpreting another facet of the Powe decision. The overruled decision, Ex parte J.A.P., 853 So. 2d 280, 284 (Ala. 2002), had held that Powe did not apply in cases involving the sexual assault of children by other children. The J.A.P. decision never set out the "least of the acts criminalized" by § 13A-6-66(a)(1), Esquivel-Quintana, 137 S. Ct. at 1568 (alterations and quotation marks omitted), because it held that in those types of cases the State had to prove something more than it had to prove in cases involving adults using forcible compulsion on children. The J.A.P. decision has no relevance to the question before us of whether sexual abuse by forcible compulsion is a violent felony.

[4] Our decision is not inconsistent with this Court's recent decision in United States v. Vail-Bailon, 868 F.3d 1293 (11th Cir. 2017) (en banc). The non-violent force situations put forward by the defendant in that case were, in the majority's view, farfetched ones that had never

We realize, of course, that the facts in this case do not involve a minor child victimized by an adult in a position of authority in that child's life.  The transcript of the plea hearing, which we have looked at as part of the modified categorical approach, shows that the victim was 17 years old and does not indicate that the defendant was related to the victim or otherwise had a position of authority over her.  But the true facts matter little, if at all, in this odd area of the law.  See Taylor, 495 U.S. at 600, 110 S. Ct. at 2159; Hill, 799 F.3d at 1322.

Davis' sentence is **VACATED** and the case is **REMANDED** for resentencing without the ACCA sentence enhancement.

---

led to a prosecution and were extremely unlikely to ever do so.  Id. at 1305–07.  Unfortunately, as the Powe, Higdon, Etheridge, and Rhodes cases demonstrate, the sexual abuse of a child by someone in a position of authority over the child is anything but farfetched; tragically, it occurs with some regularity.  See Facts and Statistics, U.S. Dep't of Justice, https://www.nsopw.gov/en-US/Education/FactsStatistics (last visited Nov. 7, 2017) (providing that "approximately 1 in 6 boys and 1 in 4 girls are sexually abused before the age of 18," and that about 90% of perpetrators of child sexual abuse either are family members of, or are otherwise known to, the child).  And in Vail-Bailon there was no state supreme court decision indicating that the statute in that case would apply to the non-violent factual scenarios the defendant posed.  In this case, however, Alabama Supreme Court decisions establish that Alabama's sexual abuse by forcible compulsion statute applies to conduct that does not necessarily include the use, attempted use, or threatened use of physical force.  Cf. Powe, 597 So. 2d at 728–29; Higdon, 197 So. 3d at 1022.

We do not join and, in fact, disagree with the criticisms that our concurring colleague makes of the en banc decision in Vail-Bailon.

21

ROSENBAUM, Circuit Judge, concurring in all but parts of footnote 4 in the panel opinion:

Though I concur generally in the panel opinion, I write separately to explain why I cannot join parts of footnote 4. I disagree that, when the facts and law we considered in *United States v. Vail-Bailon*, 868 F.3d 1293, 1305-07 (11th Cir. 2017) (en banc), are properly accounted for, *Vail-Bailon* is materially distinguishable from the case here.[1] Specifically, I take issue with two of footnote 4's statements: (1) "The non-violent force situations put forward by the defendant in [*Vail-Bailon*] were, in the majority's view, farfetched ones that had never led to a prosecution and were extremely unlikely to ever do so." Maj. Op. at 20-21 n.4 (citing *Vail-Bailon*, 868 F.3d at 1305-07); and (2) "And in *Vail-Bailon* there was no state supreme court decision indicating that the statute in that case would apply to the non-violent factual scenarios the defendant posed." *Id.* at 21 n.4. I continue to believe that *Vail-Bailon* was decided incorrectly.

In *Vail-Bailon*, we considered whether Florida felony battery qualifies as a "crime of violence" under the elements clause. Florida felony battery has two elements: a person must (1) "[a]ctually and intentionally touch[] or strike[] another person against the will of the other;" and (2) "[c]ause[] great bodily harm,

---

[1] I acknowledge, however, that the facts here are materially distinguishable from how the Court described the facts and law at issue in *Vail-Bailon*, and I agree that we are bound by the prior-precedent rule, regardless of my view of our resolution of *Vail-Bailon*.

22

permanent disability, or permanent disfigurement." Fla. Stat. § 784.041(1). As the panel opinion acknowledges and I have more thoroughly explained in my *Vail-Bailon* dissent, *Vail-Bailon*, 868 F.3d at 1314-23 (Rosenbaum, J., dissenting), the Supreme Court itself has held that the first element of this crime does not satisfy the elements clause's "physical force" requirement because it does not require "violent force" when committed by mere touch. *See* Maj. Op. at 12 (citing *Johnson v. United States*, 559 U.S. 133, 139-40 (2010)). And the second element cannot supply the necessary "physical force" because it does not demand the "use" of "physical force" as the Supreme Court has construed the meaning of "use" in the elements clause. *See Vail-Bailon*, 868 F.3d at 1316-18 (Rosenbaum, J., dissenting) (citing *Leocal v. Ashcroft*, 543 U.S. 1 (2004), *United States v. Castleman*, 134 S. Ct. 1405 (2014), and *Voisine v. United States*, 136 S. Ct. 2272 (2016)).

As relevant in responding to the panel's statements in footnote 4 here, the *Vail-Bailon* majority opinion tried to overcome these problems in two ways. First, it argued that grievous bodily injury as required by the second element of felony battery cannot occur as the result of a mere touching, except in the case of "farfetched hypotheticals," so it is practically impossible to commit felony battery by mere touch. *Vail-Bailon*, 868 F.3d at 1306. And second, it asserted that even if felony battery could occur by mere touch, Florida would not prosecute such cases.

23

*Id.* at 1306 ("Nor has Vail-Bailon shown that prosecution under Florida Statute § 784.041 for the conduct described in the hypotheticals is a realistic probability.").

With respect to the argument that felony battery by mere touch cannot realistically occur, that assumption, as a matter of fact—and as many emergency-room doctors can attest—is simply not correct.  As I have previously noted, "everyday experience tells us an unexpected touch can result in a start that causes a person to jerk involuntarily and sometimes, consequently, to injure himself. Indeed, some people tap or tickle another just to see their involuntary reactions, though they no doubt think at the time that they are engaging in harmless pranks." *Id*. at 1320 (Rosenbaum, J., dissenting).

So to firm up its conclusion that Florida felony battery necessarily always involves the "use of physical force," the Court in *Vail-Bailon* next asserted that Florida would not prosecute cases of felony battery involving mere touch.  *Id.* at 1306 ("Nor has Vail-Bailon shown that prosecution under Florida Statute § 784.041 for the conduct described in the hypotheticals is a realistic probability."). Three points undermine that conclusion.

First, Florida courts have been clear in concluding that a prosecution under § 784.041 requires no showing that the defendant intended to harm another or had reason to know that harm would result.  *See T.S. v. State*, 965 So. 2d 1288, 1290-91 (Fla. 2d Dist. Ct. App. 2007); *Jefferies v. State*, 849 So. 2d 401, 404 (Fla. 2d Dist.

24

Ct. App. 2003) ("Felony battery is clearly a species of the specific intent crime of battery . . . , but with resulting and *unintended* great bodily harm"), *receded from on other grounds by Hall v. State*, 951 So. 2d 91 (Fla. 2d Dist. Ct. App. 2007). For this reason, the mere fact that a person may not have intended or even had reason to expect harm from his mere touch of another does not shield him from prosecution under § 784.041 if his acts did, in fact, result in serious bodily injury.

Second, only a handful of the numerous cases prosecuted under § 784.041 have published opinions in them. As a result, we have no way of knowing the scope of what Florida has actually prosecuted under that statute.

And finally, because grievous bodily injury can and does at times result from mere touch, and because § 784.041 requires no showing that the defendant intended to cause or had reason to believe his actions would cause harm, it is clear that Florida could prosecute a mere touch that resulted in serious bodily injury under § 784.041. Nothing more is required. As we have explained, a petitioner does not engage in "legal imagination" "when the *statutory language itself . . .* creates the 'realistic probability' that a state would apply the statute" to the identified least culpable conduct," regardless of whether it actually has done so. *Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066, 1071-72 (11th Cir. 2013) (emphasis added).

For these reasons, I respectfully suggest that if, in the Court's *Vail-Bailon* opinion, we had properly accounted for the facts and law at issue in that case, we would find the facts here to be materially indistinguishable from those there.