[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10590
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00041-CEH-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL R. KENDRICKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 13, 2018)

Before MARCUS, WILLIAM PRYOR, and NEWSOM, Circuit Judges.

PER CURIAM:

Daniel Kendricks appeals his conviction for being a felon in possession of a

firearm and ammunition, as well as his 180-month sentence. On appeal, he argues

that: (1) the district court erred by denying his motion to suppress; (2) the district

court erred in holding that his prior convictions under Florida's aggravated assault and aggravated battery statutes qualified as "violent felonies" under the Armed Career Criminal Act ("ACCA"); (3) his sentence violates the Fifth and Sixth Amendments because his prior convictions were not charged in the indictment or proven beyond a reasonable doubt; and (4) 18 U.S.C. § 922(g)(1) is facially unconstitutional. After thorough review, we affirm.

We review a district court's denial of a motion to suppress under a mixed standard of review, reviewing findings of fact for clear error and legal conclusions de novo. United States v. Pierre, 825 F.3d 1183, 1191 (11th Cir. 2016). For clear error to exist, we "must be left with a definite and firm conviction that a mistake has been committed." Id. (quotation omitted). Substantial deference is given to a district court's credibility determinations. United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003). The facts are construed in the light most favorable to the prevailing party. United States v. Newsome, 475 F.3d 1221, 1223-24 (11th Cir. 2007). Whether probable cause exists is a legal question we review de novo. United States v. Franklin, 694 F.3d 1, 7 (11th Cir. 2012).

Similarly, we review de novo whether a prior conviction is a violent felony within the meaning of the ACCA. United States v. Howard, 742 F.3d 1334, 1341 (11th Cir. 2014). We also review de novo challenges to the constitutionality of a defendant's sentence. United States v. Ghertler, 605 F.3d 1256, 1268 (11th Cir.

2

2010). However, constitutional challenges raised for the first time on appeal are reviewed only for plain error. United States v. Candelario, 240 F.3d 1300, 1306 (11th Cir. 2001). To establish plain error, a defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). If the defendant satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. Under the prior panel precedent rule, we are bound by prior published decisions that have not been overruled by the Supreme Court or us sitting en banc. United States v. Romo-Villalobos, 674 F.3d 1246, 1251 (11th Cir. 2012).

First, we are unpersuaded by Kendricks' claim that the district court erred in denying his motion to suppress. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113 (1984). A "seizure" occurs when an individual's possessory interest in certain property is meaningfully interfered with. Id. The Supreme Court has emphasized that the touchstone of the Fourth Amendment is reasonableness, "measured in objective terms by examining the totality of the circumstances." Ohio v. Robinette, 519 U.S. 33, 39 (1996).

3

A warrantless search or seizure is presumptively unreasonable, unless an exception to the warrant requirement applies. United States v. Berrong, 712 F.2d 1370, 1372 (11th Cir. 1983). Under the exigent-circumstances exception, the warrantless seizure of a firearm has been deemed reasonable where there is a real concern for the officers' safety. Newsome, 475 F.3d at 1226.

Under the plain-view doctrine, an object may be seized without a warrant if (1) an officer is lawfully located in a place from which the object can be plainly viewed, (2) the officer has a lawful right to access the object, and (3) the object's incriminating nature is immediately apparent. United States v. Folk, 754 F.3d 905, 911 (11th Cir. 2014). An object's incriminating character is immediately apparent when police have probable cause to believe the object in plain view is contraband or evidence of a crime. Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). Probable cause exists if, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc) (quotation omitted).

The Supreme Court has said that inspecting an object in plain view and recording its serial number does not constitute a "search" or "seizure." Arizona v. Hicks, 480 U.S. 321, 324 (1987). In Hicks, officers entered the defendant's apartment without a warrant after a bullet was fired through his floor and injured

someone to search for the shooter, other victims, and weapons. Id. at 323. During the search, they came across stereo equipment that they suspected was stolen, recorded their serial numbers, and, in doing so, moved some of the components. Id. Based on the serial numbers, they later discovered that the equipment was stolen. Id. The Supreme Court held that inspecting parts of the equipment that came into view during the lawful search was not a separate search because it would have produced no additional invasion of the defendant's privacy interests. Id. at 324-25. However, the Court added that "taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion" of the defendant's privacy that were not justified by exigent circumstances. Id. at 325.

Here, Kendrick argues that the district court erred in denying his motion to suppress a firearm seized during the execution of an arrest warrant. We disagree. The incident began when officers arrived at a residence with a warrant looking for a shooting suspect, met Kendricks (who was not the suspect), and walked into the garage on Kendricks's suggestion. In the garage, Detective Cappiello, not knowing if the suspect was in there, saw a gun on a table, seized it, and disarmed it by removing the magazine and a live round from the gun's chamber. At the time of the seizure of the gun, Kendricks was standing unsecured between Cappiello and another officer. Even after unloading the gun, Detective Cappiello believed it

5

could still be a threat, and held onto it for a few minutes. While Cappiello was unloading the gun, its serial number was exposed to view, and he called into the police system to determine whether the gun had been stolen. At the same time he began the call -- either just before or just after the start of the call -- Kendricks engaged in a conversation with the detective and told him he had been to prison.

On this record, Kendricks's proximity to the firearm after it was disassembled raised safety concerns justifying its continued seizure. Kendricks does not dispute the district court's determination that exigent circumstances existed when Detective Cappiello found the firearm -- police were still searching for the suspect and Kendricks was unsecured in the garage -- making the initial seizure and disassembly of the firearm lawful. These safety concerns did not dissipate after disassembly of the firearm because, even if Kendricks had moved toward a door of the garage, he was still considered in close proximity to the detective and the firearm. See Newsome, 475 F.3d at 1224. Thus, the district court did not err in holding that Cappiello's continued possession of the firearm after disassembly was justified by exigent circumstances. See id. at 1226.

Moreover, because the detective's possession of the firearm was lawful, his subsequent inquiry into its serial number was not a "search" under the Fourth Amendment. As in Hicks, the detective came across a firearm while conducting a lawful search of Kendricks's garage. See 480 U.S. at 323-25. However, unlike in

6

<u>Hicks</u>, Detective Cappiello did not take any unauthorized action that brought into view any concealed portion of the firearm, since, as we've already explained, the seizure was authorized. <u>See id</u>. at 325. As a result, Cappiello's subsequent call to run the serial number did not result in any additional invasion into Kendricks' privacy interests and was not an independent search. <u>See id</u>.

Finally, the ultimate seizure of the firearm was lawful under the plain-view doctrine. As for the first two prongs of the test, Kendricks concedes that Cappiello was lawfully present in the garage and the firearm was in plain view and, as we've held, Cappiello had a lawful right to access the firearm. <u>See</u> <u>Folk</u>, 754 F.3d at 911. As for the third prong -- that the firearm's incriminating nature was immediately apparent -- Cappiello was in lawful possession of the firearm when Kendricks informed Cappiello that he had been to prison, giving Cappiello probable cause to believe that the firearm was evidence of a crime, like felon-in-possession. <u>See</u> <u>Minnesota</u>, 508 U.S. at 375. We add that the district court did not clearly err in finding credible Cappiello's testimony about Kendricks' disclosure of his criminal history or his testimony in general. Even if the detective's testimony slightly varied at the two suppression hearings about whether Kendricks disclosed his criminal history before or during the call about the firearm, it was not materially so inconsistent as to undermine the detective's credibility. <u>See</u> <u>McPhee</u>, 336 F.3d at 1275. The district court did not err in denying the motion to suppress.

7

We also find no merit to Kendricks' claim that his prior convictions under Florida's aggravated assault and aggravated battery statutes do not qualify as "violent felonies" under the ACCA.  The ACCA imposes heightened prison sentences for certain defendants with three prior convictions for either violent felonies or serious drug offenses.  18 U.S.C. § 924(e)(1).  The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)   is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).  The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, the third prong contains what is commonly called the "residual clause."  United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012).  To determine whether a prior conviction qualifies under the elements clause, we employ a "categorical approach."  United States v. Davis, 875 F.3d 592, 597 (11th Cir. 2017).  If the statute necessarily requires the government to prove as an element of the offense the use, attempted use, or threatened use of physical force, then the offense categorically qualifies as a violent felony.  Id.

8

When a statute lists multiple alternative elements, rather than different means, by which it may be violated, the statute is divisible and the modified categorical approach is applied. Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). Applying the modified categorical approach, the sentencing court may look to certain "Shepard documents" -- including a defendant's charging documents -- to determine which divisible subsection of the statute of conviction was applied to the defendant. Id.; Shepard v. United States, 544 U.S. 13, 16 (2005). The court will then compare the subsection the defendant was convicted under using the categorical approach to determine if it is a categorical match. Mathis, 136 S. Ct. at 2249; Descamps v. United States, 570 U.S. 254, 257 (2013).

Florida's aggravated assault statute provides that an aggravated assault is an assault "[w]ith a deadly weapon without intent to kill" or "[w]ith an intent to commit a felony." Fla. Stat. § 784.021(1)(a)-(b). Florida's simple assault statute defines an assault as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011(1).

Florida's aggravated battery statute provides that a person commits an aggravated battery when, in committing a battery, he: (1) intentionally or knowingly causes great bodily harm, permanent disability, or permanent

9

disfigurement; (2) uses a deadly weapon; or (3) caused a battery upon a pregnant woman and he knew or should have known that the victim was pregnant. Fla. Stat. § 784.045(1)(a)-(b). A battery is committed where the person "[a]ctually and intentionally touches or strikes another person against the will of the other" or "[i]ntentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a).

In Turner v. Warden Coleman FCI (Medium), we held that a prior conviction for aggravated assault under Fla. Stat. § 784.021 and an aggravated battery under § 784.045 both qualified as violent felonies under the ACCA. 709 F.3d 1328, 1338, 1341 (11th Cir. 2013), abrogated on other grounds by Johnson v. United States, 135 S. Ct. 2551 (2015).[1] There, the defendant was convicted of aggravated assault for firing shots at a man standing outside his home and aggravated battery for stabbing a man in the chest. Id. at 1331. As for the former, we said that an aggravated assault conviction would always include the use of physical force against the person of another, thus categorically qualifying as an ACCA predicate violent felony. Id. at 1338. As for the latter, we employed the modified categorical approach and, looking to the facts underlying the conviction, determined that, because the victim was male, we could rule out that the third

---

[1] In United States v. Hill, 799 F.3d 1318, 1321 n.1 (11th Cir. 2015), a panel of this Court noted that it was no longer bound by its determination in Turner that battery on a law enforcement officer was a violent felony under the residual clause after Johnson. Hill, 799 F.3d at 1321 n.1. However, Johnson did not undermine the portion of Turner that relied on the elements clause to determine that aggravated assault and aggravated battery qualify as violent felonies. See Johnson, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony.").

prong of the aggravated battery statute was the basis for his conviction. Id. at 1341. We then held that an aggravated battery conviction for either intentionally causing great bodily harm or using a deadly weapon categorically qualified as predicate ACCA violent felonies because they had as an element the use, attempted use, or threatened use of physical force. Id.

Here, the district court did not err in determining that Kendricks's aggravated assault and aggravated battery convictions qualified as ACCA predicate violent felonies. First, Kendricks' argument that Fla. Stat. § 784.021 is not a predicate violent felony is foreclosed by our holding in Turner, 709 F.3d at 1338. While Kendricks argues that Turner was wrongly decided, our decision remains binding unless and until it is overruled by this Court en banc or the Supreme Court. See Romo-Villalobos, 674 F.3d at 1251.

As for Kendricks' aggravated battery conviction under Fla. Stat. § 784.045, we look to underlying facts of the conviction to determine under which subsection of the statute he was convicted, as we did in Turner. The charging information indicates that, in committing the aggravated battery, Kendricks intentionally or knowingly caused great bodily harm, permanent disability, or permanent disfigurement, which mirrors the language of aggravated battery under prong one of the statute. Fla. Stat. § 784.045(1)(a)(1). This means that Kendricks was not convicted for battery upon a pregnant woman. See Mathis, 136 S. Ct. at 2249;

11

Shepard, 544 U.S. at 16. It also means that, under Turner, Kendricks' aggravated battery conviction could not be construed as being committed by a mere touching. See Turner, 709 F.3d at 1341. Thus, Kendricks' aggravated battery conviction falls under prong one of the Florida statute, and constitutes an ACCA predicate violent felony. See id. Because Kendricks has the requisite three convictions -- for aggravated assault, aggravated battery, and sale of cocaine (which he does not challenge here) -- that qualify as predicate violent felonies or serious drug offenses under the ACCA, we need not address Kendricks's challenges to his aggravated-battery-without-a-firearm convictions. See 18 U.S.C. § 924(e)(1).

Next, we reject Kendricks' argument that his sentence violates the Fifth and Sixth Amendments because his prior convictions were not charged in the indictment or proven beyond a reasonable doubt. In Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court determined that prior convictions need not be alleged in the indictment or proven to a jury beyond a reasonable doubt. Id. at 239-47. Kendricks' Fifth and Sixth Amendment challenge to his sentence is, therefore, foreclosed by binding Supreme Court precedent.

Similarly, we find no merit to Kendricks' claim that 18 U.S.C. § 922(g)(1) is facially unconstitutional because it exceeds Congress's authority under the Commerce Clause. We've previously held that § 922(g)(1) is constitutional and does not violate the Commerce Clause. United States v. McAllister, 77 F.3d 387,

12

389 (11th Cir. 1996).  Accordingly, Kendricks' challenge to the constitutionality of § 922(g)(1) is foreclosed by our binding precedent.

**AFFIRMED**.