REL:09/26/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

### 1121121

_____

**Ex parte Ronald Eugene Hollander, Jr.**

**PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CRIMINAL APPEALS**

**(In re: Ronald Eugene Hollander, Jr.**

**v.**

**State of Alabama)**

**(Lauderdale Circuit Court, CC-12-350;
Court of Criminal Appeals, CR-12-0297)**

PER CURIAM.

WRIT QUASHED. NO OPINION.

1121121

Stuart, Bolin, Parker, Murdock, Shaw, Main, and Wise, JJ., concur.

Moore, C.J., and Bryan, J., dissent.

1121121

MOORE, Chief Justice (dissenting).

The Lauderdale Circuit Court denied the motion filed by Ronald Eugene Hollander, Jr., to withdraw his guilty plea to attempted first-degree assault. The Court of Criminal Appeals affirmed the trial court's denial by an unpublished memorandum. Hollander v. State (No. CR-12-0297, May 24, 2013), ___ So. 3d ___ (Ala. Crim. App. 2013) (table). Because I believe that Hollander has satisfied the legal standard for the withdrawal of a guilty plea and that the result in this case works an injustice, I dissent.

## I. Facts and Procedural History

The statement of facts attached to the criminal complaint alleges that on January 7, 2012, Chris Weldon, a City of Florence police officer, received information that an individual was acting suspiciously in a parking lot in Florence.[1] Arriving at the scene, Weldon observed an individual looking into the window of a vehicle. As Weldon

_____

[1] The complaint does not set forth the factual basis upon which the allegations against Hollander are based. The statement of facts attached to the complaint is unsigned and unsworn, contrary to the requirements of § 15-7-2, Ala. Code 1975. Although the statement of facts does not indicate which police officer witnessed the alleged crimes, the grand jury's indictment identifies the officer as Chris Weldon.

3

approached, the individual got into a different vehicle. Weldon then spoke with the individual, who identified himself as Ronald Hollander. The officer detected an odor of paint coming from the vehicle and observed that Hollander had a can of gold spray paint and a plastic bag. When Hollander started his engine, Weldon told him to turn it off, but Hollander instead drove away. Weldon pursued Hollander in his patrol car.

The statement of facts continues:

"Hollander turned into the Med Plus parking lot[,] which dead ends. Hollander turned his vehicle around and accelerated towards Officer's vehicle[,] striking it in the front. Hollander then sideswiped the officer's vehicle[,] causing more damage to the officer's vehicle. Hollander then drove through Crocodile Ed's parking lot in a reckless manor [sic][,] which endangered patrons and property. He then ran two stop signs and exited the parking lot West bound [sic] on Mal[l] Road. While exiting the parking lot Hollander lost control[,] almost striking several vehicles at the intersection of Mall Rd. and Cloyd Blvd. He then accelerated to over 65 MPH (twice the speed limit). Hollander then turned West bound [sic] on Florence Blvd. Other officers joined the pursuit at this time. Hollander made a right turn onto Arlington Blvd. He was blocked by several patrol officers and he stopped at Monticello Ave. and Arlington Blvd. He was taken into custody without further incident. The time f[r]ame is from 7:26 PM to 7:55 PM."

1121121

A Lauderdale County grand jury indicted Hollander for four misdemeanors and for the felony of attempted assault in the first degree, which Hollander allegedly accomplished by "ramming" Weldon's patrol car with his vehicle, in violation of §§ 13A-4-2 and 13A-6-20, Ala. Code 1975.

Hollander's trial counsel filed a motion seeking discovery of certain listed items, which the trial court granted. On June 6, 2012, the State served on Hollander's attorney a notice of discovery, indicating that a CD, containing 30 pages of documents, and a DVD had been provided to the defendant. In plea negotiations the State rejected Hollander's request to attend a residential drug-treatment program as an alternative to prison. Because Hollander had three prior felonies, a conviction of attempted first-degree assault, a Class C felony,[2] would mandate a sentence under the Habitual Felony Offender Act ("the HFOA"), § 13A-5-9, Ala. Code 1975, of 15 years to 99 years or life imprisonment. The State offered Hollander a plea agreement for a 15-year sentence.

_____

[2]Although first-degree assault is a Class B felony, § 13A-6-20(b), the offense is reduced to a Class C felony when charged as an attempt. § 13A-4-2(d)(3), Ala. Code 1975.

5

Hollander's attorney, seeking to avoid the severe consequence of a fourth felony conviction for her client, sought to convince the court to continue the case until Hollander finished a long-term drug-treatment program. A record of rehabilitation, she believed, could induce the State to recommend a plea that would avoid a fourth felony conviction. Although Hollander's case was assigned to Judge Michael Jones, a different judge, Judge Gilbert Self, whom Hollander's counsel considered sympathetic to residential drug-treatment programs, was assigned to conduct the pretrial and settlement conferences.

On August 9, 2012, during the pretrial conference before Judge Self, Hollander's counsel argued the motion for in-patient drug treatment.

> "Judge, Mr. Hollander is a notorious paint huffer. He has been huffing paint since, I think, thirteen years old.[3]
>
> "....
>
> "I've represented Mr. Hollander for years, Judge, on various matters. And as an officer of the court, I can represent to you that I've never seen Ronnie in this state of mind.
>
> "....

---

[3]At the time of the hearing, Hollander was 30 years old.

6

"He has never come to me and said, 'Please get me into treatment. I want to be clean and sober.' He has done that now."

Counsel then explained her strategy:

"He is charged with a very serious offense, and it is an offense that probably really doesn't need to be tried. We are asking the Court to continue the trial and allow this defendant to go to long-term in-patient drug treatment.

"And frankly, Your Honor, I think if he does that and completes it and is successful at it, I think the State may be in a better position to negotiate a settlement in this case.

"I am, I have never been optimistic about Ronnie Hollander being clean and sober until this day. And I am, and I would ask you under those facts and circumstances to continue his trial and allow him to go."

The Lauderdale County District Attorney was unimpressed. Noting previous unfruitful attempts to work with Hollander, he was "not agreeable to him avoiding prison by going to treatment now" and was "opposed to him avoiding the consequences for endangering the lives of law enforcement while under the influence, by now, at this eleventh hour, trying to go to treatment."

1121121

Noting that he had discussed the matter with Judge Jones, Judge Self denied the motion to continue the case pending drug treatment.

> "THE COURT: All right. I'm not going to continue it. This is based on my conversation with Judge Jones. This was Judge Jones's file before he left, that was, you know --
>
> "[Hollander's counsel]: I understand, Judge.
>
> "THE COURT: You know, so if you all want to discuss that with Judge Jones Tuesday, that is fine. Okay. But as far as I'm concerned, we'll leave it set for trial."

Judge Self reiterated: "So I'm going to deny the motion to continue. It remains set for next week. And then let the chips fall where they may. And you just need to take this up with Judge Jones. It's Judge Jones's file."

Thus, trial now loomed for Hollander before Judge Jones early in the following week. Seeking to avoid trial and a subsequent imposition of sentence by Judge Jones, counsel advised Hollander to reappear before Judge Self in a continuation of the pretrial conference to plead guilty and seek a lenient sentence. Counsel calculated that the potential detriment of pleading guilty would be more than offset by

8

having Judge Self, rather than Judge Jones, as the sentencing judge.

On Friday, August 10, Hollander reappeared before Judge Self to plead guilty to attempted first-degree assault, a Class C felony, under an "open plea." Although the minimum punishment under the HFOA was 15 years, trial judges have the option under the Split Sentence Act, § 15-18-8, Ala. Code 1975, to split a sentence of 20 years or less into a combination of time served in prison and on probation. The prison portion of that sentence can be as little as three years. § 15-18-8(a)(1), Ala. Code. 1975.[4] Alternatively, the trial judge may sentence the defendant to a rehabilitation program of 90 to 180 days. Upon successful completion of the program, the rest of the defendant's sentence may be suspended and a period of probation ordered. § 15-18-8(a)(2), Ala. Code. 1975. Hollander thus entered an "open" plea in the hope that Judge Self would agree to suspend or to split his sentence.[5]

---

[4]The prison portion of a split sentence may itself be suspended, and probation ordered. § 15-18-8(c), Ala. Code. 1975. See Ex parte McCormick, 932 So. 2d 124 (Ala. 2005).

[5]Conviction of certain offenses disqualifies a defendant from receiving a split sentence. However, the crime of attempted assault to which Hollander pleaded guilty is not a disqualifying offense.

As his counsel stated: "[I]t's been explained to him over the course of the last two days that he's pleading open, but the minimum punishment is fifteen years, subject to suspension or a split by this Court." The district attorney explained: "He wants to appeal to the Court for something less than [15 years in prison], that involves a drug treatment option. Hence, his willingness to plead open."

Because the State opposed any sentence of less than 15 years in prison, Judge Self decided "to defer adjudication of guilt and acceptance of the plea until I've had an opportunity to look at the [presentencing] report. And given the two opposing views, I'm going to need that report." He rescheduled Hollander's sentencing for September 26. Up to this point, Hollander's strategy of avoiding a trial before Judge Jones and positioning himself to be sentenced by Judge Self had succeeded. However, for reasons not fully set forth in the record, Hollander's sentencing was rescheduled for September 27 before Judge Jones. This development suddenly confronted Hollander with the ominous flip side of the open plea -- that Judge Jones might sentence him to more than 15 years. He

hastened to instruct his attorney to move to withdraw his guilty plea.

Hollander's counsel, arguing for the withdrawal of the guilty plea, candidly explained to Judge Jones why "I advised my client at the time he entered his plea to enter an open, best interest, guilty plea[6] in front of Judge Self":

> "Your Honor, Judge Self took the plea and set this matter for sentencing. At that time we fully believed that Judge Self would hear this matter at sentencing. I don't think it's any secret that Judge Self typically views a request for drug treatment more favorably than this court does, and Mr. Hollander certainly needed to make a very strong argument on that point."

Counsel then explained how this strategy was potentially about to boomerang:

> "Subsequent to the guilty plea this court changed the way the system was working and reassigned cases based on their original judge; that caused this defendant to be reassigned to this court unbeknownst to my client. That, in effect, de facto resulted in me giving my client poor legal advice to enter into an open plea."

---

[6]A judge may order a split sentence if "satisfied that the ends of justice and the best interests of the public as well as the defendant will be served thereby." § 15-18-8(a), Ala. Code 1975.

1121121

As a further argument in support of withdrawing the guilty plea, Hollander's counsel explained that she had recently become aware of a police video of Hollander's arrest:

> "[P]rior to the plea my client entered and subsequent to the plea my client asked me more than once if I had reviewed the video in this case. I instructed him I had no video and assumed there was no video because I did not have a video; however, subsequent to the plea my client instructed me to investigate and find why there was no video, that all police cars have dash cam videos and why didn't I have it. I did that, and yesterday I located two DVDs in the district attorney's file that I reviewed. With their permission I took those to my office. One of them did, in fact, contain a dash cam video that recorded the entire series of events as they unfolded. Your Honor, if that video was ever provided to me or my staff, either myself or my staff misplaced it or lost it. Therefore it was never provided. My client never had an opportunity to review the video and I stand here before you today stating that that video supports my client's version of events much more than the State's version of events. Therefore my client entered into a guilty plea without his lawyer having all the facts and without him having the opportunity to review all the evidence ...."

(Emphasis added.)

Judge Jones denied Hollander's motion to withdraw his guilty plea, adjudicated him guilty of attempted assault, dismissed the remaining misdemeanor charges, and sentenced Hollander as a habitual felony offender to 20 years in prison.

12

1121121

On October 24, 2012, Hollander filed a postjudgment motion to set aside his guilty plea. Forgoing argument about the misadventure of the unexpected change of sentencing judge, the motion relied completely on the belated discovery of the police-chase video. Prior to entering a guilty plea, the motion stated, Hollander had inquired of his attorney "numerous times" as to why no "dash-cam" video was provided in discovery. Counsel had told him that a video had not been produced and therefore must not exist. Because of Hollander's repeated requests about the video both before and after the guilty plea, counsel finally inquired of the district attorney's office and obtained a copy, which Hollander had yet to view. The video, stated the motion, "painted a different light on the facts of the case."

Counsel explained in the motion how not having the video had skewed her advice to Hollander's disadvantage.

> "Had the undersigned had the opportunity to review the video tape prior to the plea, the legal advice given to the defendant would have been far different from the legal advice that the defendant received. It was on the undersigned's advice that the defendant pled guilty to the crime for which he is charged."

13

1121121

On November 2, 2012, the circuit court denied Hollander's motion to withdraw his guilty plea. The Court of Criminal Appeals affirmed Hollander's conviction for attempted first-degree assault and his sentence as a habitual felony offender. Hollander then petitioned this Court for a writ of certiorari, which we granted and which this Court today quashes.

## II. Standard of Review

"[W]hether a defendant should be allowed to withdraw a plea of guilty is a matter solely within the discretion of the trial court, whose decision will not be disturbed on appeal absent a showing of abuse of discretion." Ex parte Heaton, 542 So. 2d 931, 933 (Ala. 1989).

## III. Analysis

Before the Court of Criminal Appeals, Hollander argued that his constitutional right to effective assistance of counsel had been violated in two respects. First, trial counsel advised Hollander to plead guilty in the expectation that he would be sentenced by Judge Self. However, this strategy failed, exposing Hollander to the hazard of an open plea before Judge Jones. Second, trial counsel, despite multiple requests by Hollander, failed to obtain and to review

14

the dashboard-camera video that recorded the events leading to his arrest.

"In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient, and (2) that he was prejudiced by the deficient performance." Burtram v. State, 733 So. 2d 921, 922 (Ala. Crim. App. 1998) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "In the context of guilty plea proceedings, a petitioner must show that, but for his counsel's errors, he would not have pleaded guilty but would have insisted on proceeding to trial." Burtram, 733 So. 2d at 922 (citing Hill v. Lockhart, 474 U.S. 52, 58-59 (1985)). "The court shall allow withdrawal of a plea of guilty when necessary to correct a manifest injustice." Rule 14.4(e), Ala. R. Crim. P.

A. The Strategy of Seeking Sentencing Before Judge Self

Simply because counsel's strategy to present Hollander for sentencing before Judge Self did not succeed does not mean counsel was ineffective. Otherwise, every convicted defendant would have a viable ineffective-assistance claim. Instead, the "petitioner must show that counsel's performance was so

1121121

deficient as to fall below an objective standard of reasonableness." Ex parte Baldwin, 456 So. 2d 129, 134 (Ala. 1984). Counsel's strategy, with which Hollander agreed, to seek sentencing before Judge Self rather than a trial before Judge Jones may have failed because of circumstances beyond counsel's control, but it certainly was objectively reasonable. As the Court of Criminal Appeals stated:

> "Because counsel was familiar with Hollander's long-standing struggles with substance abuse, it was not unsound trial strategy for counsel to suggest a plea agreement in front of a judge normally sympathetic to requests for drug treatment. That trial counsel did not predict the case would be transferred to another judge cannot be considered deficient performance ...."

Because Hollander has not met his burden of showing that counsel's tactical decision to seek sentencing before Judge Self was objectively unreasonable, we need not ask whether that decision caused him prejudice. "[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

B. Counsel's Failure to Locate the Police Dashboard-Camera Video

16

1121121

The Court of Criminal Appeals, conceding that counsel's failure to discover the dashboard-camera video in a timely manner satisfied the first Strickland prong of deficient performance, nonetheless held that the failure did not prejudice Hollander's decision to plead guilty.

> "Hollander's argument that his trial counsel's assistance was deficient based on trial counsel's failure to investigate whether there was an exculpatory dashboard video satisfies the first Strickland prong. Counsel admitted to either misplacing the video if it had been sent, or failing to look in the district attorney's file for the video even after repeated requests by Hollander to investigate the existence of the video. Because it was unreasonable not to determine whether there was a dashboard-camera video that contained potentially exculpatory evidence, Hollander's trial counsel's performance was arguably deficient under the first Strickland prong. ...

> "Although counsel's performance was arguably deficient, Hollander has not demonstrated the prejudice necessary to satisfy the second Strickland prong."

The Court of Criminal Appeals stressed that, despite counsel's statements that the video favored Hollander's version of the events, its absence from the record means that "there is nothing to indicate that the video would exonerate Hollander." However, Hollander did not need to show that the missing video would exonerate him, only "that there is a

17

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694 (emphasis added). See Hill v. Lockhart, 474 U.S. 52, 59 (1985) (stating that "whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea" (emphasis added)); Waters v. State, 963 So. 2d 693, 696 (Ala. Crim. App. 2006) (holding that because the defendant "did not have complete information upon which to base his decision" the trial court should have afforded him the opportunity to withdraw his guilty plea).

In this case we need not estimate the "likelihood" that counsel would have changed her recommendation, because the record indicates that she did and that she so informed the trial court at the sentencing hearing. Further, when decisive evidence, which the defendant sought diligently to discover, but counsel negligently failed to acquire, suddenly surfaces

18

1121121

after the entry of a guilty plea, counsel's failure to offer that evidence into the record when moving for withdrawal of the plea at the sentencing hearing further undermines confidence in the outcome.

The Court of Criminal Appeals additionally reasoned that the evidence against Hollander was so strong that even the availability of the video would not have changed his decision to plead guilty.

> "The record indicates that Hollander was observed by police officers huffing paint in the driver's seat of an automobile. Hollander refused to turn off his car when police ordered him to do so, and then led police on a high-speed chase once officers tried to apprehend him. During that high-speed chase Hollander ended up in a dead-end alley, and in his attempt to reverse course and escape, he rammed into a police car. Hollander was charged with five separate crimes for his actions, and the State had numerous police witnesses that would testify to Hollander's guilt for each of those crimes. Considering the State's evidence, it is unlikely that Hollander would not have agreed to plead guilty given the evidence against him and the number of crimes for which he was charged."

These assertions do not conform with the facts alleged in the indictment and the criminal complaint. According to the indictment, only Officer Chris Weldon witnessed Hollander huffing paint, driving off, eluding Weldon, striking Weldon's patrol car with his vehicle, recklessly driving through the

19

parking lot of a mall, and leading Weldon in a police pursuit that created a substantial risk of serious physical injury to Weldon. According to the statement of facts attached to the complaint, the other officers joined the pursuit only after Hollander committed the alleged crimes. Considering that the State's evidence of attempted first-degree assault hinges on the testimony of only one witness, it is unlikely that Hollander pleaded guilty on account of "numerous police witnesses."

Likewise, the number of crimes charged is not conclusive of Hollander's decision to plead guilty. Each of the four misdemeanors carried a maximum sentence of 12 months. They pale in comparison, even collectively, to the potential sentence of 15 years to life for the attempted-assault charge as magnified by the habitual-felony-offender enhancement. Knowing that evidence was available that could conclusively exonerate him from the attempted-assault charge would certainly have altered Hollander's decision to plead guilty.

Deficient performance, but not prejudice, may be found, for instance, when a purported error of counsel is harmless. For example, trial counsel may fail to object to hearsay

testimony, but other properly admitted evidence may be so probative of the defendant's guilt as to render the improper evidence duplicative and thus nonprejudicial. In this case, however, the dashboard-camera video is unique and likely conclusive, in that it portrays the actual events underlying the guilty plea. In the absence of the video, the jury would have to weigh Hollander's credibility against that of the police officer. With the video, Hollander has the assistance of incontrovertible evidence that could conclusively exonerate him. Counsel's statements indicate that, in her view, Hollander would not have pleaded guilty had he been able to view that evidence on a timely basis. She freely confessed that her error in this regard induced Hollander to plead guilty. Hollander's insistence that the video was essential to his defense indicates that he understood that it would benefit him. Repeatedly asking counsel to inquire about the existence of the video would have been irrational if Hollander knew that he had indeed directly rammed the police vehicle in full view of the dashboard-camera recording device.

"An ineffectiveness claim ... is an attack on the fundamental fairness of the proceeding whose result is

challenged." Strickland, 466 U.S. at 697. When deficient performance of counsel causes unique dispositive evidence to be unavailable on a timely basis for consideration in making the decision whether to plead guilty or go to trial, the unfairness to the defendant who pleads guilty without knowledge of the existence of this evidence is palpable. The failure of trial counsel to offer the video into evidence, and thus its absence from the record on appeal, prohibits us from determining the precise degree of prejudice Hollander suffered from its absence.[7] Nonetheless, to require Hollander to suffer the effects of a guilty plea he would not otherwise have entered into but for counsel's deficient performance is fundamentally unfair. See Ex parte Thomas, 616 So. 2d 352 (Ala. 1992) (holding that a refusal to permit the withdrawal of a guilty plea in light of misrepresentations about lost evidence "constituted a manifest injustice" justifying withdrawal of the plea).

---

[7]Indeed, counsel's failure to offer the video into evidence at the hearing on Hollander's motion to withdraw his guilty plea is further evidence of deficient performance and resulting prejudice to Hollander. If the video were in the record, this Court would have had a firmer basis on which to evaluate Hollander's petition.

1121121

Allowing Hollander to withdraw his guilty plea does not mean he will go free. "Upon withdrawal of a guilty plea, the charges against the defendant as they existed before any amendment, reduction, or dismissal made as part of a plea agreement shall be reinstated automatically." Rule 14.4(e), Ala. R. Crim. P. Unless he repleaded, Hollander would still face trial for attempted first-degree assault and four misdemeanors. But at his side he would have not only counsel, but also the perfect witness: a video of the events giving rise to his indictment.

## IV. Conclusion

Because under governing law Hollander is entitled to withdraw his guilty plea, I dissent from quashing the writ of certiorari.