[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11513

_____

D.C. Docket No. 7:17-cr-00145-LSC-HNJ-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RAYMON MARQUELL HARRIS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 29, 2019)

Before MARCUS, JULIE CARNES, and KELLY,* Circuit Judges.

MARCUS, Circuit Judge:

_____

* The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, sitting by designation.

Raymon Marquell Harris appeals a 210-month sentence imposed after he pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The district court enhanced appellant's sentence under the Armed Career Criminal Act ("ACCA") based, in part, on his prior conviction for attempted first-degree assault under Alabama Code § 13A-6-20(a), which the sentencing court counted as a "violent felony" under the ACCA's elements clause. On appeal, Harris argues that the district court erred in concluding that his § 13A-6-20(a) conviction qualified as a violent felony because (1) the government's proffered transcript of the plea colloquy taken from his state conviction did not qualify as a Shepard[1] document and therefore could not be considered by the sentencing court, and (2) the plea colloquy itself failed to establish under which subsection of § 13A-6-20(a) he pled guilty, and some of the offenses contained in § 13A-6-20(a) involve reckless assault and, therefore, do not qualify as predicates for the ACCA.  Harris has raised no challenge to the other predicate convictions.  After careful review, we affirm.

I.

Harris was indicted for, and pled guilty to being a felon in unlawful possession of a firearm, in violation of § 922(g)(1).  Under 18 U.S.C. § 924(e), a person convicted of violating § 922(g) is subject to a fifteen-year minimum

---

[1] Shepard v. United States, 544 U.S. 13 (2005).

2

sentence as an armed career criminal if he has at least <u>three</u> prior convictions for a "violent felony" or a "serious drug offense." The probation office determined that Harris was subject to this enhancement based on his three prior Alabama felonies: two 2004 convictions for unlawfully distributing a controlled substance, as "serious drug offenses"; and a 2011 conviction for attempted first-degree assault, as a "violent felony." Only the last conviction is at issue today and forms the basis of this appeal.

Harris timely objected to the designation of his assault conviction as a violent felony. At sentencing, the government offered the transcript of a plea colloquy taken from the Alabama state convicting court. The transcript showed that, after Harris confirmed that he understood his rights and waived them, the State proffered the following factual basis for the plea:

> . . . [O]n April the 5th, 2008, around three o'clock in the morning, that [victims D.T.] and [M.T.] were at the Shell station located at the intersection of Greensboro and Skyland. While at the Shell station, this defendant's brother, Keandre Harris, got into an altercation. During the course of the altercation, witnesses including [M.T.] and [D.T.], observed this defendant come out of his vehicle with a pistol and began shooting at the two [victims]. . . . [D.T.] was hit multiple times. [M.T.] was also hit by bullet fragments and received injuries. . . . [As Harris's] vehicle . . . was leaving the parking lot of the Shell station, a police officer arriving at the scene attempted to stop the vehicle, but it did not stop, and he fired shots at the vehicle striking it three times. The vehicle was stopped on Greensboro Avenue, and inside the vehicle being driven by this defendant was a magazine for a .9 millimeter pistol that was found on the floorboard . . . and a magazine in the pistol that would hold twelve nine millimeter bullets. Seven were missing from the gun.

3

When police searched the scene at the Shell station, they recovered seven .9 millimeter shell casings.

Harris pled guilty to attempted first-degree assault.  And the state court found that he entered the plea knowingly, intelligently, and voluntarily.  Notably, Harris was not asked and never said whether the government's factual proffer was accurate.

At the sentencing hearing for the instant § 922(g)(1) offense, the district court overruled Harris's objections to the ACCA enhancement, concluded that his attempted first-degree assault conviction met the ACCA's definition for a violent felony, and, therefore, determined that Harris had three qualifying felonies under § 924(e)(1). Accordingly, the court sentenced Harris to a term of imprisonment of 210 months, followed by 5 years' supervised release.

Harris has timely appealed his sentence to this Court.

## II.

We review de novo a district court's determination that a defendant's prior conviction qualifies as a violent felony under the ACCA.  United States v. Davis, 875 F.3d 592, 596 (11th Cir. 2017).

## A.

Generally, a defendant convicted of being a felon in possession of a firearm under § 922(g)(1) is subject to a maximum sentence of ten years' imprisonment.  See 18 U.S.C. § 924(a)(2).  But the ACCA mandates a minimum sentence of 15 years' imprisonment for any defendant convicted of being a felon in possession of

4

a firearm who has three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." Id. § 924(e)(1). The government bears the burden of establishing that an ACCA sentencing enhancement is warranted. United States v. Lee, 586 F.3d 859, 866 (11th Cir. 2009).

The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). Subsection (i) is called the "elements clause," the first part of subsection (ii) generally is known as the "enumerated crimes clause," and the second part of subsection (ii) is the "residual clause." United States v. Pickett, 916 F.3d 960, 962 (11th Cir. 2019). In Johnson v. United States, the Supreme Court struck down the ACCA's residual clause as unconstitutionally vague, but said that the decision did not call into question the application of the elements clause or the enumerated crimes clause. 135 S. Ct. 2551, 2557–58, 2563 (2015).

Plainly, Harris's attempted first-degree assault conviction does not fall under the enumerated crimes clause; the parties only argue about whether it falls under the elements clause. See 18 U.S.C. § 924(e)(2)(B)(ii). We hold that it does. "To

5

qualify under the elements clause, a state offense must require the defendant to commit, to attempt, or to threaten physical acts that are directly or indirectly capable of causing physical pain or injury." Hylor v. United States, 896 F.3d 1219, 1222 (11th Cir. 2018) (quotation omitted), cert. denied, 139 S. Ct. 1375 (2019); see Curtis Johnson v. United States, 559 U.S. 133, 140 (2010) (explaining that "the phrase 'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person"). In other words, the force must be: (1) "physical," in that it must be "exerted by and through concrete bodies"; (2) "violent," in that it must be "capable of causing physical pain or injury to another"; and (3) "use[d]," which requires "the knowing or intentional application of force." Hylor, 896 F.3d at 1222 (quotations omitted).

In deciding whether a defendant's prior state offense contains a use-of-force element, we employ a "categorical approach," which means we look to the statutory definition -- i.e., the elements -- of the offense, not the particular facts underlying the conviction. Id.; see Shepard, 544 U.S. at 19 (holding that the categorical approach applies to plea agreements, just as it does to jury verdicts). "We determine whether a state statute defines only violent felonies by evaluating the least culpable conduct criminalized by the statute." Hylor, 896 F.3d at 1222 (quotations and citation omitted and alteration adopted). While we apply federal law in interpreting the meaning of physical force under the ACCA, we are bound

6

to follow state law, as determined by a state's highest court, in order to discern the elements of the underlying state offense.  Id.

If the prior conviction was for violating a "divisible statute" -- meaning one that sets out one or more elements of the offense in the alternative -- the Supreme Court has instructed us to apply a "modified categorical approach."  See Descamps v. United States, 570 U.S. 254, 257 (2013).  Under the modified categorical approach, if some forms of the offense require the use of violent force but others do not, a sentencing court may refer to a limited class of documents -- including, among others, transcripts of a plea colloquy -- in order to determine whether the defendant's prior conviction had, as an element, the use of violent force or not. Curtis Johnson, 559 U.S. at 144 (citing Shepard, 544 U.S. at 26).

Harris was convicted of attempted first-degree assault under Alabama Code § 13A-6-20(a).  The judgment of conviction does not tell us, however, which of five iterations of first-degree assault he pled guilty to attempting.  The language in the statute defines five different ways of committing first-degree assault:

(a) A person commits the crime of assault in the first degree if:

(1) With intent to cause serious physical injury to another person, he or she causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument; or

(2) With intent to disfigure another person seriously and permanently, or to destroy, amputate, or disable permanently a member or organ of the body of another person, he or she causes such an injury to any person; or

7

(3) Under circumstances manifesting extreme indifference to the value of human life, he or she recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to any person; or

(4) In the course of and in furtherance of the commission or attempted commission of [certain enumerated felonies, including] robbery in any degree, . . . or any other felony clearly dangerous to human life, or of immediate flight therefrom, he or she causes a serious physical injury to another person; or

(5) While driving under the influence of alcohol or a controlled substance or any combination thereof . . . he or she causes serious physical injury to the person of another with a vehicle or vessel.

Ala. Code § 13A-6-20(a)(1)–(5).  The parties concede, as they must under our controlling case law, that Alabama's first-degree assault statute is divisible "because it 'lists multiple offenses.'"  See In re Welch, 884 F.3d 1319, 1325 (11th Cir. 2018) (quoting Davis, 875 F.3d at 597).  The problem in this case, however, is that the state sentencing court did not expressly state which of these "multiple offenses" Harris pled guilty to attempting to commit.  While the parties agree that a violation of § 13A-6-20(a)(1) is a violent felony, see id., they disagree about whether the other offenses listed in § 13A-6-20(a) also qualify as violent felonies. So, in order to determine whether Harris pled guilty to a violent felony, and thus a felony properly counted as an ACCA predicate, we are required to determine, if we can, which of these offenses was the basis of Harris's conviction.

8

B.

Harris first argues that he never assented to the State's factual proffer supporting his § 13A-6-20(a) conviction as recited at the plea colloquy. Thus, he says, we cannot look to the factual foundation in order to determine which offense he pled guilty to. However, he conceded at oral argument that this was not his primary argument, and for good reason. In the first place, he has raised this argument only for the first time on appeal, having argued in district court just that those facts, as accepted, still failed to establish to which subsection he pled guilty. See Walker v. Jones, 10 F.3d 1569, 1572 (11th Cir. 1994) (explaining that we've repeatedly held that we will not consider issues that were not raised in the district court and are raised for the first time on appeal). Moreover, at no point in the district court sentencing proceedings did Harris object to the presentence investigation report's ("PSI") inclusion of the factual basis for his attempted first-agree assault conviction or to any of the specific facts contained therein. Having failed to object, he thereby waived any objections and effectively admitted to the recited facts for sentencing purposes. See United States v. Bennett, 472 F.3d 825, 832–34 (11th Cir. 2006) (per curiam) (explaining that a defendant waives objections to the PSI if they are not specific and clear, and that unobjected-to factual allegations in the PSI are admitted for sentencing purposes).

9

Finally, and most important, Harris invited any error.  He told the district court unambiguously at the sentencing hearing that "there was never a dispute about the facts," but rather only a "dispute as to which prong [of § 13A-6-20(a)] he was convicted under."  Doc. 34 at 4–5 (emphasis added); see United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam) (explaining that, if a party induces or invites the district court into making an error, the doctrine of invited error precludes him from challenging that error on appeal).  Thus, not surprisingly, we decline to consider Harris's first argument and accept the facts in the PSI as having been proven.

## C.

Harris's second argument, and his main one, is that even if the plea colloquy containing the State's factual proffer constitutes a Shepard document and was properly considered by the sentencing court, the recited facts still did not establish which offense (of the five possibilities) he was convicted of, or, put differently, whether he pled guilty to reckless or intentional conduct.  And if we can't tell whether Harris pled guilty to attempted reckless first-degree assault or attempted intentional first-degree assault, he argues this state conviction cannot serve as a predicate violent felony under the ACCA because a crime resting upon reckless intent cannot serve as a violent felony under the ACCA.  Harris cites specifically to United States v. Palomino-Garcia, 606 F.3d 1317 (11th Cir. 2010), where we held

10

that "a conviction predicated on a <u>mens rea</u> of recklessness does not satisfy the 'use of physical force' requirement under U.S.S.G. § 2L1.2's definition of 'crime of violence'" where the state law defines "recklessness" as "more akin to negligence," and does not require "the <u>intentional</u> use of force."

In sharp contrast, the government suggests that the Supreme Court's recent decision in <u>Voisine v. United States</u>, 136 S. Ct. 2272 (2016), establishes that the reckless application of force also satisfies the "use of physical force" requirement under the ACCA elements clause. We need not resolve this dispute today because under Alabama law an attempted first-degree assault conviction necessarily must be predicated on an attempt to commit an intentional assault. In other words, under Alabama law, an attempt requires the specific intent to commit an offense and one cannot intend to commit a reckless offense, so only the variants of first-degree assault that require specific intent can support a conviction for attempted first-degree assault. The only subsections of § 13A-6-20(a) that require specific intent are (a)(1) and (a)(2), both of which are violent felonies. Thus, attempted first-degree assault, whether defined as an attempt to commit assault under (a)(1) or (a)(2), would constitute an ACCA predicate offense.

Under Alabama law, "[a] person is guilty of an attempt to commit a crime if, <u>with the intent to commit a specific offense</u>, he does any overt act towards the commission of such offense." Ala. Code § 13A-4-2(a) (emphasis added). Thus,

11

since Harris pled guilty to the crime of attempt, he must have <u>intended</u> to commit a first-degree assault and taken an intentional, overt act towards committing the assault in order to attempt to commit it.  See <u>id.</u>

And while Harris urges us that he could have pled guilty to attempted reckless first-degree assault under (a)(3), the Alabama Court of Criminal Appeals has held that one cannot attempt to commit a reckless offense because "'intentional' and 'reckless' are inconsistent terms."  <u>Stennet v. State</u>, 564 So. 2d 95, 96 (Ala. Crim. App. 1990).  In <u>Stennet</u>, Alabama's Court of Criminal Appeals considered whether a trial court erred in instructing the jury on the offense of attempted manslaughter.  See <u>id.</u> at 95.  Alabama law defined manslaughter as "recklessly caus[ing] the death of another person."  <u>Id.</u> at 95 (citing Ala. Code § 13A-6-3).  To commit attempted manslaughter, then, a person "must intend to recklessly cause the death of another" -- a logical impossibility.  <u>Id.</u> at 96.  Where a crime "by definition may be committed recklessly or negligently but not intentionally, . . . it is impossible to conceive of an attempt."  <u>Id.</u> at 96 (quotation omitted).  Thus, for instance, whenever a defendant attempts to cause the death of another person, the defendant is guilty of attempted <u>murder</u>, not attempted manslaughter.  <u>Id.</u> at 96.  Because it is legally impossible to intend reckless conduct, the court concluded that attempted manslaughter is not an offense under Alabama law.  See <u>id.</u> at 96–97.

12

Similarly, in Minshew v. State, 594 So. 2d 703 (Ala. Crim. App. 1991), the Alabama Court of Criminal Appeals held that "attempted reckless endangerment" was not an offense under Alabama law.  Id. at 713.  The Alabama Code provided that "[a] person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."  Id. (quoting Ala. Code § 13A-6-24(a)).  The court explained that attempted reckless endangerment was "legally impossible," since "the offense of reckless endangerment involves recklessness and an attempt as defined by § 13A–4–2 involves intent."  Id.  Again, the court explained that "'[i]ntentional' and 'reckless' are inconsistent terms."  Id. (quoting Stennet, 564 So.2d at 96).  We are required to take the state law as it comes to us, and under Alabama law a defendant simply cannot be convicted of attempting to commit an offense that calls for a reckless mens rea.[2]

Harris points, nevertheless, to two cases in which he says Alabama defendants were convicted of attempted first-degree assault where they acted

---

[2] Although the Alabama Supreme Court has published no cases on this issue, it has denied certiorari in several cases standing for the proposition that attempt to commit a reckless offense is a legal impossibility.  See, e.g., Minshew, 594 So. 2d at 713, cert. denied (Ala. 1992); Free v. State, 455 So. 2d 137, 147 (Ala. Crim. App.) ("[O]ne cannot recklessly attempt to commit murder."), cert. denied (Ala. 1984), abrogated on other grounds by McKinney v. State, 511 So. 2d 220, 222–25 (Ala. 1987).  And more importantly, "absent a decision from the state supreme court on an issue of state law, we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently."  McMahan v. Toto, 311 F.3d 1077, 1080 (11th Cir. 2002).

recklessly and without specific intent.  We are unpersuaded.  For starters, neither decision actually addressed this discrete legal question.  In Weeks v. State, 257 So. 3d 894 (Ala. Crim. App. 2018), the court expressly stated that the only issue on appeal was the defendant's competency to stand trial; it said nothing at all about the defendant's specific intent to commit the attempted first-degree assault crime. Id. at 896 ("Resolution of this appeal requires us to address only Weeks's argument that the circuit court erred in failing to order an evaluation of his competency to stand trial.").  The brief recitation of facts at the outset of the opinion could be read to suggest that his conduct was reckless -- the defendant had struck a police officer's vehicle during a chase after the officers attempted to box him in -- but it is not at all clear from the limited discussion of the facts that he did not attempt to intentionally assault the officer.  Regardless, the issue of whether the defendant had the requisite intent to commit attempted first-degree assault was not an issue on appeal.

Harris also relies on an opinion dissenting from the Alabama Supreme Court's per curiam order quashing a writ of certiorari.  See Ex parte Hollander, 164 So. 3d 1123, 1123 (Ala. 2014) (Moore, C.J., dissenting).  A dissenting opinion is not, of course, a binding exposition of state law.  And, even if the dissenting Hollander opinion were governing law in Alabama, the only issues actually before the Alabama Supreme Court were whether counsel had ineffectively advised the

14

defendant to plead guilty and ineffectively failed to obtain and review a piece of evidence. See id. at 1127. The court was not asked to decide whether attempted reckless assault stated an offense under Alabama law, and the dissenting opinion -- like the court's opinion in Weeks -- does not come close to discussing that issue, beyond briefly stating the facts underlying the conviction. See generally id. at 1123–30. Neither case contradicts the repeated holdings of Alabama's courts that one cannot attempt to commit an offense recklessly; rather, specific intent is a necessary element of any attempt to commit a crime.

Thus, Alabama law dictates that Harris could not have pled guilty to attempting to commit a form of unintentional first-degree assault. That means that he could not have been convicted under § 13A-6-20(a)(3) for "recklessly engag[ing] in conduct which creates a grave risk of death to another person," or under (a)(4) for causing serious injury in the course of another dangerous felony. See Knotts v. State, 686 So. 2d 431, 457 (Ala. Crim. App. 1995) (explaining that for the analogous offense of causing death in the course of a felony, "[t]here is an intended felony and an unintended homicide" (emphasis added)). Finally, the PSI plainly tells us that Harris's offense did not involve driving a vehicle under the influence, so his conviction could not have arisen under (a)(5).

Only two possibilities, therefore, remain: Harris either pled to the offense set out in (a)(1) or (a)(2), the only two subsections that set out offenses requiring

15

intentional conduct.  See Ala. Code §§ 13A-4-2(a), 13A-6-20(a)(1)–(2).  We need

not go further and determine whether the State's factual basis in the plea colloquy

for Harris's conviction illuminated whether he pled guilty to either (a)(1) or (a)(2)

in particular.

First off, we've already held in Welch that a conviction for completed first-

degree assault under § 13A-6-20(a)(1) is a violent felony under the ACCA's

elements clause.  884 F.3d at 1325.  There, we explained that "the 'serious physical

injury' element" under (a)(1) "requires the use of physical force, because without

such force there can be no serious physical injury."  Id.  While we have yet to rule

on whether attempted first-degree assault under § 13A-6-20(a)(1) also qualifies as

a violent felony, we explained in Hylor that "[i]t makes no difference that [the

defendant] was convicted of only attempting [a violent felony]."  896 F.3d at 1223

(holding that attempted murder is an ACCA violent felony).  The ACCA's

elements clause "'equates actual force with attempted force,' so 'the text of section

924(e) tells us that actual force need not be used for a crime to qualify under the

Act.'"  Id. (quoting United States v. St. Hubert, 883 F.3d 1319, 1334 (11th Cir.),

vacated and superseded on other grounds by 909 F.3d 335 (2018), and cert. denied

139 S. Ct. 1394 (2019)) (alterations omitted).  Together, Welch and Hylor

establish, and we now hold, that attempted first-degree assault under

§ 13A-6-20(a)(1) qualifies as a violent felony under the ACCA's elements clause.

16

Harris argues, albeit only for the first time in his reply brief, that we should not follow Hylor's holding because in that case we relied heavily upon St. Hubert, which he asserts was based upon flawed reasoning.  This argument fails for two independent reasons.  First, we "decline[] to consider issues raised for the first time in an appellant's reply brief."  See United States v. Levy, 416 F.3d 1273, 1276 n.3 (11th Cir. 2005) (per curiam).  And second, "[u]nder [the prior panel precedent] rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc."  United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008).  Because neither St. Hubert[3] nor Hylor have been overruled or undermined to the point of abrogation by either the Supreme Court or this Court in an en banc ruling, they remain binding precedent.

Moreover, we now hold, as a matter of first impression in this Circuit, that a conviction for first-degree assault under § 13A-6-20(a)(2) also is a violent felony under the ACCA's elements clause.  Again, a person commits first-degree assault under (a)(2) when, "[w]ith intent to disfigure another person seriously and

---

[3] While the St. Hubert opinion cited to in Hylor was subsequently vacated by the panel and superseded by the panel with a new opinion, the superseding opinion expressly re-adopted portions of the section in which the quoted language appears and relied upon that same language. See St. Hubert, 909 F.3d at 351 ("[T]he elements clause in the text of § 924(e) equates actual force with attempted force, and this means that the attempted use of physical force against the person of another suffices and that the text of § 924(e) thus tells us that actual force need not be used for a crime to qualify under the ACCA.").

17

permanently, or to destroy, amputate, or disable permanently a member or organ of the body of another person, he or she causes such an injury to any person." Ala. Code § 13A-6-20(a)(2). Alabama's pattern jury instructions on (a)(2) provide that, in order to convict a defendant under this subsection of the law, the State must prove beyond a reasonable doubt the following elements:

(1)    The defendant disfigured another person . . . seriously and permanently, or destroyed, amputated, or disabled permanently a member or organ of another person . . .; (AND)

(2)    The defendant did so intentionally.

Ala. Pattern Jury Instr. - Crim. Proceedings § 13A-6-20(a)(2).

This Court sitting en banc recently held that a similar offense -- felony battery as set forth in Florida Statutes § 784.041 -- is a crime of violence under the elements clause of § 2L1.2 of the Sentencing Guidelines. United States v. Vail-Bailon, 868 F.3d 1293, 1302–05 (11th Cir. 2017) (en banc). The Florida felony battery statute at issue in Vail-Bailon required "a touching that causes 'great bodily harm, permanent disability, or permanent disfigurement.'" 868 F.3d at 1302. We applied the test set out by the Supreme Court in Curtis Johnson and concluded that this statute "calls for violent force that is capable of causing physical pain or injury to another." Id. We explained that because the "touching" identified in the statute must actually cause significant injury, the force used in administering the touch must be "capable" of causing that injury. Id. at 1302–03. Thus, we held that this

18

Florida felony battery statute qualified as a crime of violence under the Guidelines' elements clause.  Id. at 1304; see also United States v. Rainey, 362 F.3d 733, 734 (11th Cir. 2004) (per curiam) (recognizing that the definition of a "crime of violence" under the career offender guideline is "virtually identical" to a "violent felony" under the ACCA).

The same analysis applies to § 13A-6-20(a)(2) too.  Here, the language crafted by the Alabama legislature in § 13A-6-20(a)(2) specifically requires that the defendant cause physical pain or injury to a victim by either seriously and permanently disfiguring the victim or by permanently destroying, amputating, or disabling a member or organ of the victim's body.  See Ala. Code § 13A-6-20(a)(2); Hylor, 896 F.3d at 1222.  In order to disfigure a person's body or destroy, amputate, or disable a member or organ, the defendant necessarily must exert physical force and must intentionally apply that force, either directly or indirectly, to the victim in a manner that actually causes serious or permanent disfigurement, destruction, amputation, or disability.  See Hylor, 896 F.3d at 1222; Vail-Bailon, 868 F.3d at 1302–03.  Moreover, since the act of disfiguring, destroying, amputating, or disabling identified in the statute must actually cause a serious or permanent injury, it follows necessarily and logically that the force used must be capable of causing that injury -- in other words, the physical force used must be violent.  See Hylor, 896 F.3d at 1222; Vail-Bailon, 868 F.3d at 1302–03.

Just like the Florida felony battery statute that we addressed in <u>Vail-Bailon</u>, this offense passes the <u>Curtis Johnson</u> test.  See <u>Vail-Bailon</u>, 868 F.3d at 1302–03. Because § 13A-6-20(a)(2) "certainly appear[s] to" call for "violent force that is capable of causing physical pain or injury to another," we hold that first-degree assault, and, based on <u>Hylor</u>, attempted first-degree assault, under Alabama Code § 13A-6-20(a)(2) qualify as ACCA violent felonies.  See Ala. Code § 13A-6-20(a)(2); <u>Hylor</u>, 896 F.3d at 1223; <u>Vail-Bailon</u>, 868 F.3d at 1302–04.

Thus, regardless of whether Harris pled guilty to attempted first-degree assault under § 13A-6-20(a)(1) or (a)(2), either offense qualifies as an ACCA violent felony under the elements clause.  And since Harris did not challenge the district court's determination that he has two other prior convictions for serious drug offenses, the court did not err in concluding that Harris had the requisite three predicate convictions to sustain an ACCA-enhanced sentence.  Accordingly, we affirm.

**AFFIRMED**.