**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-12504

————————————————

ISHMAHIL BARRIE,

*Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A203-161-749

————————————————

Before JORDAN, HULL, and MARCUS, Circuit Judges.

HULL, Circuit Judge:

In 2014, Ishmahil Barrie, a citizen of Sierra Leone and lawful permanent resident ("LPR"), was convicted of attempted first-degree sexual abuse and kidnapping, in violation of D.C. Code §§ 22-3002(a)(1), 22-3018, and 22-2001. In 2021, after Barrie served

his prison sentence, the U.S. Department of Homeland Security ("DHS") initiated removal proceedings against him. Under the Immigration and Nationality Act ("INA"), a non-citizen is removable from the United States if he has been convicted of an aggravated felony. 8 U.S.C. § 1227(a)(2)(A)(iii). DHS's removal petition alleged, *inter alia*, that Barrie was removable because his District of Columbia ("D.C.") conviction for attempted first-degree sexual abuse was an aggravated felony under the definitions in 8 U.S.C. § 1101(a)(43)(A) and (U). Those definitions include (1) "murder, rape, or sexual abuse of a minor," and (2) "an attempt . . . to commit an" aggravated felony. *Id.* § 1101(a)(43)(A), (U).

Barrie argued that his D.C. offense was not an aggravated felony because (1) the D.C. Code § 22-3002(a)(1) offense criminalized the lesser act of forceful digital penetration, *i.e.*, penetration by finger, and (2) the generic federal definition of rape required forceful sexual intercourse by at least slight penetration of the penis into a vagina but did not cover digital penetration.

The Immigration Judge ("IJ") rejected Barrie's argument and ordered him removed. The Board of Immigration Appeals ("BIA") affirmed. Barrie petitions for review.

After review, and with the benefit of oral argument, we grant Barrie's petition. We join our sister circuits in concluding that the generic federal definition of "rape," as used in § 1101(a)(43)(A), does not include digital penetration. *See Perez-Gonzalez v. Holder*, 667 F.3d 622 (5th Cir. 2012); *Keeley v. Whitaker*, 910 F.3d 878 (6th Cir. 2018); *Quito-Guachichulca v.*

*Garland*, 122 F.4th 732 (8th Cir. 2024). Because the offense of attempted first-degree sexual abuse under D.C. Code § 22-3002(a)(1) includes digital penetration, that offense does not categorically fit the generic definition of rape in § 1101(a)(43)(A). Thus, the BIA erred in concluding that Barrie's § 22-3002(a)(1) offense fell within the federal generic definition of rape and was an aggravated felony under § 1101(a)(43)(A).

While we vacate the BIA's decision, we also remand this case to the BIA to address additional issues relating to Barrie's removability, such as whether the § 22-3002(a)(1) conviction for attempted first-degree sexual abuse qualifies as an attempted crime of violence.

## I. BACKGROUND

### A.     Entry into the United States

In 2001, Barrie was admitted into the United States on a B-2 non-immigrant visitor visa. In 2011, Barrie obtained a green card and became an LPR.

### B.     D.C. Convictions

In December 2013, Barrie was charged in the Superior Court of D.C. with (1) one count of first-degree sexual abuse, in violation of D.C. Code § 22-3002(a)(1), and (2) one count of kidnapping, in violation of D.C. Code § 22-2001. In March 2014, Barrie pled guilty to attempted first-degree sexual abuse and kidnapping pursuant to a written plea agreement.

The plea agreement contained a proffer of facts, which described Barrie's offense conduct as follows. On December 23, 2013, Barrie entered the home of his ex-girlfriend without her permission. Barrie went into her bedroom where she was sleeping and confronted her, refusing to leave. Barrie dragged the victim into a closet and detained her there for approximately two hours. Barrie covered her mouth when she tried to scream for help and prevented her from leaving the closet when she struggled to escape.

Eventually, Barrie let the victim out of the closet, at which point she returned to her bed. Barrie then dragged her from the bed onto the floor where he "forcibly penetrated her vagina with his fingers against her will," and "forcibly penetrated [her] vulva with his penis, against her will." The victim ran out of the apartment and called the police for help.

In May 2014, Barrie was sentenced to 60 months of imprisonment for his sexual-abuse offense and a consecutive 48 months of imprisonment for his kidnapping offense, for a total of 108 months of imprisonment.

## C.    Notice to Appear

In September 2021, DHS served Barrie with a notice to appear ("NTA") for removal proceedings. The government alleged that Barrie was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an "aggravated felony" of (1) attempted rape as stated in 8 U.S.C. § 1101(a)(43)(A) and (U), and (2) a crime of violence as stated in 8

U.S.C. § 1101(a)(43)(F).  The NTA also alleged that Barrie was removable under 8 U.S.C. § 1227(a)(2)(A)(i) because he had been convicted of a crime involving moral turpitude ("CIMT") committed within 5 years of admission into the United States.[1]

### D.    Removability

Barrie admitted to the factual allegations in the NTA but denied the removability allegations.  Barrie argued that he was not removable based on a CIMT conviction because his 2014 D.C. convictions occurred more than five years after he was admitted into the United States.  Barrie also asserted that the offenses of his 2014 D.C. convictions did not qualify as aggravated felonies. Specifically, he contended that (1) the D.C. offenses were not "crimes of violence," and (2) the D.C. offense of first-degree sexual abuse was not a "rape" because that offense criminalized forceful digital penetration, while the generic federal definition of rape did not.

In its written brief, the government argued that the D.C. sexual-abuse offense constituted an aggravated felony as both (1) a crime of violence and (2) a rape.

The IJ concluded that Barrie was removable because the D.C. offense of attempted first-degree sexual abuse was an aggravated felony of attempted rape.  But the IJ rejected the CIMT

---

[1] The NTA originally charged Barrie with a theft aggravated felony conviction, but it was amended to omit that charge and replace it with the crime of violence charge.

charge because the D.C. convictions occurred more than five years after Barrie's admission into the United States. The IJ, however, did not address whether Barrie's two D.C. convictions fell within the crime of violence definition of an aggravated felony. The CIMT and crime of violence issues were not litigated further in the removal proceedings.

### E.    Requests for Relief from Removal

In 2022, Barrie then filed applications for (1) a waiver of inadmissibility under 8 U.S.C. § 1182(h) based on the exceptional and extremely unusual hardship his U.S. citizen wife and LPR parents would suffer if he was removed to Sierra Leone; (2) adjustment back to LPR status based on his marriage to a U.S. citizen; and (3) deferral of removal under the United Nations Convention Against Torture ("CAT").

As to CAT relief, Barrie argued that it was more likely than not that he would be tortured if he was removed to Sierra Leone because of (1) his father's political associations with the two major political parties in Sierra Leone; (2) his mental health issues; and (3) his status as a criminal deportee based on his D.C. convictions.

At an evidentiary hearing, the IJ heard testimony from Barrie, his wife, his parents, and a series of expert witnesses in forensic psychology, clinical psychology, and country conditions.

### F.    First IJ Order of Removal

On February 16, 2023, in a written order, the IJ denied Barrie's requests for relief from removal and ordered him removed

to Sierra Leone.  The IJ found that Barrie failed to establish his entitlement to a waiver of inadmissibility or CAT relief on any ground.[2]  The IJ did not address the issue of removability and only stated that the court already had determined that Barrie was removable under § 1227(a)(2)(A)(iii).

### G.    First Appeal to the BIA

Barrie appealed the IJ's removal order to the BIA.  Barrie argued that the IJ erred by concluding that the D.C. offense of first-degree sexual abuse constituted an aggravated felony of rape because the D.C. offense criminalized digital penetration, while the generic federal definition of rape did not.[3]  Barrie asserted that the BIA should overrule its precedential decision in *Matter of Keeley*, 27 I. & N. Dec. 146 (BIA 2017), *rev'd sub nom.*, *Keeley v. Whitaker*, 910 F.3d 878 (6th Cir. 2018), in which it concluded that the generic federal definition of rape included digital penetration.  Barrie also argued that the IJ erred by denying his requests for a waiver of inadmissibility and CAT relief.

On August 11, 2023, the BIA dismissed Barrie's appeal in part but also remanded the case to the IJ for further proceedings.  The BIA concluded that Barrie was removable because his  D.C.

---

[2] The IJ also concluded that Barrie was not entitled to adjustment of status because (1) his D.C. convictions rendered him inadmissible, and (2) he was not entitled to a waiver of inadmissibility.

[3] Barrie also argued that his D.C. kidnapping conviction was not a basis for removal, and that the D.C. attempted sexual-abuse offense did not constitute a crime of violence.

conviction for attempted first-degree sexual abuse was for the aggravated felony of attempted rape under 8 U.S.C. § 1101(a)(43)(A) and (U). The BIA reasoned that under *Matter of Keeley* the generic federal offense of rape included digital penetration, so the D.C. offense of sexual abuse was not categorically broader than the generic rape offense. The BIA declined to reach any of the other charges as to Barrie's removability. The aggravated felony of "rape" was a sufficient basis alone for removal.

The BIA also adopted and affirmed the IJ's denial of Barrie's request for a waiver of inadmissibility. However, the BIA determined that the IJ erred in denying Barrie's request for CAT relief. The BIA concluded that the IJ (1) did not clearly err in its analysis of any of the individual risks of torture that Barrie alleged but (2) erred in failing to consider the aggregate risk of torture that each individual risk posed when taken together. The BIA therefore remanded the case to the IJ for the limited purpose of conducting the necessary aggregation analysis for Barrie's CAT claim.

## H.    CAT Remand Proceedings Before IJ

On remand, Barrie argued that it was more likely than not that he would be tortured if he was removed to Sierra Leone when the individual alleged risks of torture were considered in the aggregate. Barrie's brief again argued that his 2014 D.C. sexual-abuse conviction was not for an aggravated felony of attempted rape.

In December 2023, the IJ held another evidentiary hearing to hear further testimony and arguments relating to Barrie's CAT claim. At the hearing, the IJ declined to hear Barrie's arguments as to removability because that was outside of the scope of the BIA's limited remand directions.

On February 6, 2024, the IJ entered a written order denying Barrie's request for CAT relief and ordering him removed to Sierra Leone. The IJ found that Barrie was not entitled to CAT relief because he failed to establish that it was more likely than not that he would be tortured if he was removed to Sierra Leone. The IJ reasoned that the alleged risks of torture did not satisfy the standard for CAT relief when considered either individually or in the aggregate.

## I.     Second Appeal to the BIA

Barrie again appealed the IJ's removal order to the BIA. Barrie argued that the IJ erred (1) by denying his request for CAT relief, and (2) by not addressing his removability arguments.

On July 29, 2024, the BIA affirmed the IJ's order of removal. The BIA adopted and affirmed the IJ's denial of Barrie's CAT claim. The BIA determined that Barrie failed to show that it was more likely than not that he would be tortured if he was removed to Sierra Leone when his alleged risks of torture were considered either individually or in the aggregate.

The BIA declined to address Barrie's removability arguments because its earlier remand was limited solely to the CAT aggregation issue.

On August 2, 2024, Barrie filed a timely petition for review in this Court challenging the BIA's July 29, 2024 order.

## II.  STANDARD OF REVIEW

This appeal requires us to decide whether the D.C. offense of attempted first-degree sexual abuse in D.C. Code § 22-3002(a) constitutes an aggravated felony of attempted rape as stated in § 1101(a)(43)(A) and (U).

We review *de novo* whether a non-citizen's crime of conviction constitutes an aggravated felony under § 1101(a)(43). *Cintron v. U.S. Att'y Gen.*, 882 F.3d 1380, 1383 (11th Cir. 2018).  We review only the BIA's decision regarding removability because it did not adopt the IJ's decision on that issue.[4] *Id.* at 1383 n.2.

As this case involves an issue of statutory interpretation, we must decide for ourselves the statute's "single, best meaning" without deferring to the BIA.  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 412–13 (2024).  We use the traditional tools of statutory construction to "determine the best reading of [each] statute." *Id.* at 400.

---

[4] When the BIA adopts the IJ's decision, we review both the BIA's and IJ's decisions.  *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).  The BIA adopted the IJ's denial of a waiver of inadmissibility in the first appeal and the denial of CAT relief in the second appeal.  We, however, do not reach these issues in this appeal.

24-12504             Opinion of the Court                11

## III.  RELEVANT STATUTES

### A.     D.C. Code §§ 22-3002(a) and 22-3001(8)

The parties do not dispute that Barrie was convicted of attempted first-degree sexual abuse under D.C. Code §§ 22-3002(a)(1) and 22-3018.  Section 22-3002(a) makes it a crime when a "person engages in or causes another person to engage in or submit to <u>a sexual act . . . [b]y using force</u> against that other person."  D.C. Code § 22-3002(a) (2014) (emphasis added).  In turn, § 22-3018 criminalizes attempts to commit sexual offenses, including sexual abuse.  *Id.* § 22-3018.

Section 22-3002 does not define the term "sexual act." Rather, D.C. Code § 22-3001 defines "sexual act" by a list of these three alternatives:

> (A) "The penetration, however slight, of the anus or vulva of another by a penis;"

> (B) "Contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;" or

> (C) "<u>The penetration</u>, however slight, of the anus or vulva <u>by a hand or finger</u> or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

*Id.* § 22-3001(8)(A)–(C) (emphasis added).  Subsection (D) of § 22-3001(8) further states, "The emission of semen is not required for the purposes of subparagraphs (A)–(C) of this paragraph."  *Id.* § 22-3001(8)(D).  We now turn to the statutory definition of aggravated felony.

**B.    8 U.S.C. § 1101(a)(43) and the Categorical Approach**

The INA lists twenty-one alternative definitions for aggravated felony.   8 U.S.C. § 1101(a)(43).   The first of these definitions states that aggravated felony means "murder, rape, or sexual abuse of a minor."  *Id.* § 1101(a)(43)(A).  And an <u>attempted</u> aggravated felony is itself an aggravated felony.   *See* 8 U.S.C. § 1101(a)(43)(U).

The pivotal issue in this appeal thus becomes only whether Barrie's first-degree sexual abuse conviction was for the aggravated felony of rape under § 1101(a)(43)(A).

In analyzing whether Barrie's D.C. sexual abuse conviction constitutes the aggravated felony of rape, we apply a doctrine called the categorical approach. *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 389 (2017).  The categorical approach requires that we look to the statute of conviction rather than the specific facts underlying the crime.  *Id.*  We must ask whether the D.C. statute defining the crime of conviction "categorically fits within the generic federal definition" of rape.  *Id.* (quotation marks omitted). "In other words, we presume that the state conviction rested upon the least of the acts criminalized by the statute, and then we determine whether that conduct would fall within the federal definition of the crime."[5]   *Id.* (quotation marks omitted and alteration adopted).

---

[5] For some statutes we must apply the modified categorical approach. *Descamps v. United States*, 570 U.S. 254, 261–64 (2013) (a divisible statute lists alternative elements and creates different crimes).  If the statute of conviction

The parties agree that digital penetration is the least of the acts criminalized by the D.C. statute. D.C. Code §§ 22-3002(a)(1), 22-3001(8)(C). Therefore, Barrie's § 22-3002(a)(1) offense is an aggravated felony of rape under § 1101(a)(43)(A) only if the generic federal offense of rape includes digital penetration.

## IV.  GENERIC FEDERAL DEFINITION OF RAPE

In 1996, Congress added the term "rape" to the INA as an aggravated felony. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-627. Congress did not define "rape" or give a cross-reference to a corresponding federal offense. So we must give the term "rape" its ordinary meaning in 1996. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012); *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 313 (11th Cir. 2025).

To give the term "rape" its ordinary meaning, we use "the normal tools of statutory interpretation." *Esquivel-Quintana*, 581 U.S. at 391 (explaining that we interpret undefined terms in the list of aggravated felonies using the normal tools of statutory

---

is divisible and creates different crimes—and does not instead simply enumerate "various factual means of committing a single element"—then we must determine which crime the non-citizen was convicted of by looking at a limited class of documents. *Mathis v. United States*, 579 U.S. 500, 505–06 (2016).

Although there is an issue as to whether D.C. Code § 22-3002(a)(1) is divisible based on the alternative definitions of "sexual act" in § 22-3001(8), we do not address the divisibility issue in this appeal because neither the IJ nor the BIA did so.

interpretation). We must discern how the term "rape" was "commonly understood" in 1996 at the time Congress used it. *Descamps v. United States*, 570 U.S. 254, 257 (2013); *see also Loper Bright*, 603 U.S. at 400 ("[E]very statute's meaning is fixed at the time of enactment." (citation omitted)). To do so, we look to relevant sources such as "[d]ictionary definitions, federal laws, state laws, and the Model Penal Code." *Pugin v. Garland*, 599 U.S. 600, 604 (2023); *Esquivel-Quintana*, 581 U.S. at 395–97 (reviewing "state criminal codes for additional evidence about the generic meaning of sexual abuse of a minor.").

The Fifth, Sixth, and Eighth Circuits have considered the issue, and each has concluded the federal generic definition of "rape" in 1996 did not include digital penetration. For the reasons stated below, we join our sister circuits. *See Perez-Gonzalez*, 667 F.3d at 625–27 (holding that digital penetration was not commonly considered rape in 1996); *Keeley*, 910 F.3d at 882–84 ("[T]he generic crime of rape in 1996 . . . . did not include digital penetration."); *Quito-Guachichulca*, 122 F.4th at 735–39 ("[T]he aggravated-felony version of 'rape' excludes digital or mechanical penetration.").

## A.    Statutory Text

The text of the INA itself is the most important guiding factor to our statutory interpretation. Two features of the text of § 1101(a)(43)(A) are key here.

First, it is significant that Congress used the specific word "rape." That is because "[w]hen Congress uses a term with origins in the common law, we generally presume that the term brings the

old soil with it." *Kousisis v. United States*, 605 U.S. 114, 124 (2025) (quotation marks omitted); *see also Stokeling v. United States*, 586 U.S. 73, 80 (2019) ("If a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." (quotation marks omitted and alteration adopted)).  When Congress uses a term with a traditional, common-law definition, we presume it intended to invest the term with its traditional meaning as opposed to an alternative one.  *See Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276, 1291 (11th Cir. 2016).

The parties correctly do not dispute that the traditional common-law definition of rape does not include digital penetration.  For example, the 1990 edition of Black's Law Dictionary defines "rape" as "[t]he unlawful carnal knowledge of a woman by a man forcibly and against her will."  *Rape*, Black's Law Dictionary (6th ed. 1990).  "Carnal knowledge" means "the act of a man having sexual bodily connections with a woman" or "sexual intercourse," which occurs "if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male." *Carnal Knowledge*, Black's Law Dictionary (6th ed. 1990).  The 1999 edition of Black's Law Dictionary describes this definition as the "common law" definition.  *Rape*, Black's Law Dictionary (7th ed. 1999).

Likewise, the traditional meaning of "rape" was also contained in the 1996 edition of Webster's Dictionary, which defined "rape" as "the act of physically forcing a woman to have

sexual intercourse."  *Webster's Encyclopedic Unabridged Dictionary of the English Language* 1191 (1996).   "Sexual intercourse" was separately defined as "genital contact, . . . esp. the insertion of the penis into the vagina followed by ejaculation."  *Id*. at 1308.

Consequently, Congress's use of the word "rape" in § 1101(a)(43)(A)—without any other language suggesting that the word should be defined differently from its common-law meaning—demonstrates that Congress intended to define "rape" according to that traditional meaning.

Second, and more importantly, in the same provision in which it included "rape" in the definition of "aggravated felony," immediately after Congress used the term "sexual abuse of a minor."  8 U.S.C. § 1101(a)(43)(A) (defining "aggravated felony" as "murder, rape, or sexual abuse of a minor").  By using the word "rape" immediately preceding "*sexual abuse* of a minor," Congress distinguished between two separate but overlapping generic offenses.

The fact that Congress used "rape" and "sexual abuse" next to each other in the same provision indicates that it intended for the two terms to have different, distinctive meanings.  *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings.") (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170-71 (2012)).  Given that Congress intended to give "rape" and "sexual abuse" different meanings in § 1101(a)(43)(A), the best way to

distinctively define those two terms is (1) to presume that "rape," as a word with common-law roots, bears its traditional meaning, and (2) to read "sexual abuse" as covering a broader range of sexual acts than traditional rape, including digital penetration, as discussed below.

Tellingly too, if "rape" and "sexual abuse" were to share the same meaning in § 1101(a)(43)(A), then "sexual abuse of a minor" would be unnecessary surplusage because it would be subsumed by "rape," which is not limited to a specific category of victims. A broad reading of "rape" is thus contrary to the doctrine against surplusage. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("We are reluctant to treat statutory terms as surplusage in any setting." (quotation marks omitted)).

Accordingly, we conclude that the federal generic term "rape" in § 1101(a)(43)(A) bears its narrow, traditional common-law meaning and does not include digital penetration. The text of § 1101(a)(43)(A) strongly, perhaps conclusively, yields this result, but our conclusion is cemented by how Congress differentiated between the words "rape" and "sexual abuse" in the enactment and repeal of other statutes, as discussed below.

## B.    1986 Repeal of Federal Rape Law

Prior to 1986, Congress criminalized the commission of "rape" "within the special maritime and territorial jurisdiction of the United States." Pub. L. No. 80-772, 62 Stat. 683, 795 (1948) (codifying "rape" at 18 U.S.C. § 2031). At that time, Congress did not specifically define the word "rape" in § 2031, and courts

interpreted it based on its common-law definition. *See, e.g.*, *United States v. Smith*, 574 F.2d 988, 990 (9th Cir. 1978) ("Section 2031 of title 18 has been interpreted to punish rape as defined at common law, that is, carnal knowledge of a female by force or threat of force." (footnote omitted)).

In 1986, however, Congress repealed the federal offense of "rape" and replaced it with the offenses of "sexual abuse" and "aggravated sexual abuse." Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646, 100 Stat. 3592, 3620–23 (codified at 18 U.S.C. §§ 2241 and 2242). Congress defined "aggravated sexual abuse" as "knowingly caus[ing] another person to engage in a sexual act—(1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." 18 U.S.C. § 2241(a).

Like in D.C. Code § 22-3002(a), "sexual act" in the new 1986 federal law was defined to include both penetration by penis and digital penetration. 18 U.S.C. § 2246(2)(A), (C). Unlike common-law rape, the new federal offense of aggravated sexual abuse (1) did not require that the perpetrator be a man and the victim a woman; (2) did not necessarily require the use of force; and (3) covered a broader range of sexual acts than just sexual intercourse, including digital penetration. *Id.* §§ 2241, 2246(2)(A)–(D).

This change to the federal rape law, which occurred only ten years prior to the 1996 amendment to the INA, clearly

demonstrates that Congress distinguished between the terms "rape" and "sexual abuse." By replacing the traditional offense of "rape" with broader offenses called "sexual abuse," Congress proscribed a broader range of sexual acts than are covered by the traditional definition of rape.

To effect this intent, Congress (1) used the term "sexual abuse" instead of "rape" to make sure that courts would not interpret the new offense according to the common-law definition of rape, and (2) included an explicit definition for "sexual abuse" rather than leaving it for courts to interpret. *Compare* Pub. L. No. 80-772, 62 Stat. 683, 795 (1948), *with* Pub. L. No. 99-646, 100 Stat. 3592, 3620–23 (Nov. 10, 1986). The 1986 amendment reflects Congress's understanding that a statute like the old federal rape law, which used the word "rape" alone without any clarifying definition, would lead courts to interpret the word "rape" based on its common-law roots. *See id.*

In stark contrast, in the INA's amended § 1101(a)(43)(A), Congress used the word "rape" without any clarifying definition in 1996, like it did in the old federal rape law. Congress thus knew in 1996 that using the word "rape" without any explanation would lead courts to interpret the word in light of its common-law roots. This is powerful support for our statutory interpretation of the "rape" and "sexual abuse" language in § 1101(a)(43)(A).

## C.    Violent Crime Control and Law Enforcement Act in 1994

How Congress used the word "rape" in other laws passed in the years surrounding the 1996 amendment to the INA also

supports our statutory interpretation. In 1994, Congress passed the Violent Crime Control and Law Enforcement Act ("VCCLEA"), which, among other things, mandated that defendants convicted of a serious violent felony be sentenced to life imprisonment if they had previous convictions for serious violent felonies. Pub. L. No. 103-322, 108 Stat. 1796, 1982–84 (1994) (amending 18 U.S.C. § 3559). That law classified "assault with intent to commit rape" as a serious violent felony. 18 U.S.C. § 3559(c)(2)(F)(i) (1994).

Notably, though, the law then broadly defined "assault with intent to commit rape" as "an offense that has as its elements engaging in physical contact with another person or using or brandishing a weapon against another person with intent to commit aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242)." *Id.* § 3559(c)(2)(A) (1994). Congress thus sometimes did define "rape" in more expansive terms. In the 1996 INA amendment, however, Congress gave no such broader definition to "rape."

Moreover, "rape" does not stand alone in § 1101(a)(43)(A); it is paired with a reference to "sexual abuse of a minor." And because Congress undoubtedly meant to cover a broader range of sex offenses against minors, "rape" must be the narrower of the two terms and cannot have the same definition that it does in the VCCLEA.

### D.    Prison Rape Elimination Act

That Congress knows how to define rape in broader terms is also shown by the Prison Rape Elimination Act, enacted in 2003.

In that Act, Congress again broadly defined "rape" as "the carnal knowledge, oral sodomy, sexual assault with an object, or sexual fondling of a person, forcibly or against that person's will." Pub. L. No. 108-79, 117 Stat. 972, 988 (2003) (codified at 42 U.S.C. § 15609(9)(A), now 34 U.S.C. § 30309(9)(A)). The 2003 law then defined "sexual assault with an object" to include the penetration, however slight, of the victim's "genital or anal opening of the body" by the use of a hand, finger, or other object. 42 U.S.C. § 15609(10) (2003) (now 34 U.S.C. § 30309(10)).

In sum, all three of these laws show that Congress well understood that if it wanted to give the word "rape" a definition broader than its traditional, common-law meaning, it needed to explicitly say so. *See Quito-Guachichulca*, 122 F.4th at 737 & n.2. Otherwise, courts would continue to incorporate the narrow, common-law definition according to the normal tools of statutory interpretation, as we do here.

## E.    Dictionary Definitions

As already noted, dictionary definitions as of 1996 also indicate that rape was still usually associated with its narrow, traditional, common-law meaning, which did not include digital penetration.

But by 1999 the entry for "rape" in Black's Law Dictionary did include both the narrow, common-law definition as well as a broader definition. *Rape*, Black's Law Dictionary (7th ed. 1999). The latter definition was "[u]nlawful sexual activity (esp. intercourse) with a person (usu. a female) without consent and usu.

by force or threat of injury." *Id.* That entry, however, explained that most states had broadened the definition of "rape" in a similar way, and some state statutes now called "rape" names like "unlawful sexual intercourse," "sexual assault," "sexual battery," and "sexual abuse." *Id.* The 1999 edition also defined "sexual abuse" as "[a]n illegal sex act, esp. one performed against a minor by an adult," and cited to the broader definition of "rape." *Abuse*, Black's Law Dictionary (7th ed. 1999). Some state statutes may have adopted new statutory terms and definitions, but the fact remains that the INA in 1996 had used only the traditional word "rape."

We recognize that the 1995 edition of Bryan Garner's "A Dictionary of Modern Legal Usage" defined "rape" according to its narrow, traditional common-law meaning but also included a broader definition. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 733–34 (2d ed. 1995). Even so, that entry also explained that the broader definition was now included because in the 1980s a number of states had "abolished rape as a separate offense" and created a new offense called "sexual assault" that covered a broader range of sexual activity than traditional rape. *Id.*

Lastly, there's the 1996 edition of Merriam-Webster's Dictionary of Law, which defined "rape" as "unlawful sexual activity and usu. sexual intercourse carried out forcibly or under threat of injury against the will usu. of a female or with a person who is beneath a certain age or incapable of valid consent." *Merriam-Webster's Dictionary of Law* 404 (1996). That entry then

included the common-law definition, which it explained "required at least slight penetration of the penis into the vagina." *Id.* There was no mention of digital penetration. *See id.* The entry also acknowledged that, while some states maintained the common-law definition, most states had broadened the offense's scope, "esp. in terms of the . . . nature of the acts involved." *Id.* The INA in 1996 did no such thing.

### F.    Model Penal Code

The Model Penal Code ("MPC") also did not define "rape" to include digital penetration. In 1962, the MPC defined "rape" as when a male "has sexual intercourse with a female not his wife," where the offender, among other alternatives, compels the victim to submit by force. Model Penal Code § 213.1(1) (Am. L. Inst., Proposed Official Draft 1962). The MPC separately defines "sexual intercourse" as including "intercourse per os [mouth] or per anum [anus], with some penetration however slight." *Id.* § 213.0(2).

The 1985 explanatory note to the rape provision explains that the definition of "rape" "retains the traditional limitation of rape to the case of male aggression against a female who is not his wife," but extends the traditional definition to include "intercourse per os or per anum." *Id.* § 213.1 explanatory note.

It is worth noting that the MPC separately criminalized "deviate sexual intercourse by force or imposition" and "sexual assault." *Id.* §§ 213.2, 213.4. The latter of these offenses proscribed "offensive" sexual contact, *id.* § 213.4, which shows that the

American Law Institute distinguished between the narrow offense of "rape" and broader sexual offenses with different names.

## G.     State Statutes

To be sure, the law of sex offenses in the states was in a flux in 1996. Nonetheless, the term "rape" in 1996 was generally understood to not cover digital penetration. As of 1996, twenty-four states still had an offense specifically called "rape," and of those states, only seven included penetration by finger or other body part in the definition of the "rape" offense.[6]

---

[6] The states that had an offense called "rape" that did not include digital penetration in its definition were Alabama, California, Georgia, Idaho, Indiana, Kentucky, Louisiana, Maryland, Mississippi, Missouri, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Utah, and Virginia. *See* Ala. Code §§ 13A-6-60, -61 (1996); Cal. Penal Code § 261 (1996); O.C.G.A. § 16-6-1 (1996); Idaho Code § 18-6101 (1996); Ind. Code § 35-42-4-1 (1996); Ky. Rev. Stat. Ann. §§ 510.010, 040 (1996); La. Stat. Ann. §§ 14:41, 42 (1996); Md. Ann. Code art. 27, §§ 462, 463 (1996); Miss. Code Ann. § 97-3-65 (1996); Mo. Rev. Stat. § 566.030 (1996); N.Y. Penal Law §§ 130.00, 35 (1996); N.C. Gen. Stat. § 14-27.2 (1996); Okla. Stat. tit. 21, § 1111 (1996); Or. Rev. Stat. § 163.375 (1996); 18 Pa. Cons. Stat. § 3121 (1996); Utah Code Ann. § 76-5-402 (1996); Va. Code Ann. § 18.2-61 (1996).

The states that had an offense called "rape" that included digital penetration were Arkansas, Kansas, Massachusetts, Ohio, South Dakota, Tennessee, and Washington. *See* Ark. Code Ann. §§ 5-14-101, -103 (1996); Kan. Stat. Ann. §§ 21-3501, -3502 (1996); Mass. Gen. Laws ch. 265, § 22 (1996); Ohio Rev. Code Ann. §§ 2907.01, 02 (1996); S.D. Codified Laws §§ 22-22-1, -2 (1996); Tenn. Code Ann. §§ 39-13-501, -502 (1996); Wash. Rev. Code §§ 9A.44.010, 040 (1996).

24-12504                Opinion of the Court                 25

On the other hand, among the jurisdictions that did not have an offense called "rape" but instead had broader sexual penetration offenses under names like "sexual assault" and "sexual abuse," twenty-three states, D.C., and the federal government included penetration by finger or other body part in those offenses, while only three states did not.[7]

---

[7] The jurisdictions that did not have an offense called "rape" but instead had broader sexual penetration offenses with different names that covered digital penetration were Alaska, Arizona, Colorado, Connecticut, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, Rhode Island, South Carolina, Texas, Vermont, West Virginia, Wisconsin, and Wyoming. *See* Alaska Stat. §§ 11.41.410, 11.81.900 (1996); Ariz. Rev. Stat. Ann. §§ 13-1401, -1406 (1996); Colo. Rev. Stat. §§ 18-3-401, -402 (1996); Conn. Gen. Stat. §§ 53a-65, -70 (1996); D.C. Code §§ 22-4101, -4102 (1996); Fla. Stat. § 794.011 (1996); Haw. Rev. Stat. §§ 707-700, -730 (1996); 720 Ill. Comp. Stat. §§ 5/12-12, -13 (1996); Iowa Code §§ 702.17, 709.1 (1996); Mich. Comp. Laws § 750.520a, b (1996); Minn. Stat. §§ 609.341, 342 (1996); Mont. Code Ann. §§ 45-2-101, 45-5-503 (1996); Neb. Rev. Stat. §§ 28-318, -319 (1996); Nev. Rev. Stat. §§ 200.364, 366 (1996); N.H. Rev. Stat. Ann. §§ 632-A:1, 2 (1996); N.J. Stat. Ann. §§ 2C:14-1, 2 (1996); N.M. Stat. Ann. § 30-9-11 (1996); R.I. Gen. Laws §§ 11-37-1, -2 (1996); S.C. Code Ann. §§ 16-3-651, -652 (1996); Tex. Penal Code Ann. § 22.021 (1996); Vt. Stat. Ann. tit. 13, §§ 3251, 3252 (1996); W. Va. Code §§ 61-8B-1, -3 (1996); Wis. Stat. § 940.225 (1996); Wyo. Stat. Ann. §§ 6-2-301, -302 (1996).

The states that did not have an offense called "rape" but instead had sexual penetration offenses with different names that did not cover digital penetration were Delaware, Maine, and North Dakota. *See* Del. Code Ann. tit. 11, §§ 761, 775 (1996); Me. Stat. tit. 17-A, §§ 251, 253 (1996); N.D. Cent. Code §§ 12.1-20-02, -03 (1996).

Additionally, many of the states that had an offense called "rape" also had broader sexual penetration offenses under names like "sexual assault" or "sexual abuse." Those states generally defined "rape" without including digital penetration but defined the broader sexual penetration offenses to include a broader range of sexual acts, including digital penetration.[8]

This data shows that in 1996, the term "rape" was generally understood to not cover digital penetration. When states had an offense called "rape," they commonly defined that offense without including digital penetration in the definition of rape. Conversely, when states wanted to proscribe a broader range of sexual acts that were not covered by the traditional definition of "rape," they did so by creating new offenses with names like "sexual assault" and

---

[8] The states that had both an offense called "rape" that did not cover digital penetration and a separate sexual penetration offense that covered a broader range of sexual acts, such as digital penetration, included California, Georgia, Idaho, Indiana, Mississippi, Missouri, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, and Virginia. *See* Cal. Penal Code § 289 (1996); O.C.G.A. § 16-6-22.2 (1996); Idaho Code § 18-6608 (1996); Ind. Code §§ 35-42-4-2, 35-41-1-9 (1996); Miss. Code Ann. §§ 97-3-95, -97 (1996); Mo. Rev. Stat. §§ 566.010, 060 (1996); N.Y. Penal Law § 130.67 (1996); N.C. Gen. Stat. §§ 14-27.1, 4 (1996); Okla. Stat. tit. 21, § 1111.1 (1996); Or. Rev. Stat. § 163.411 (1996); 18 Pa. Cons. Stat. § 3125 (1996); Va. Code Ann. § 18.2-67.2 (1996). Of the remaining states that had an offense called "rape" that did not cover digital penetration—Alabama, Kentucky, Louisiana, Maryland, and Utah—each had a "sexual abuse," "sexual battery," or "sexual offense" statute that banned forcible digital penetration under some broader umbrella term (*e.g.*, sexual contact). *See* Ala. Code § 13A-6-66 (1996); Ky. Rev. Stat. Ann. § 510.110 (1996); La. Stat. Ann. § 14:43.1 (1996); Md. Ann. Code art. 27, § 464C (1996); Utah Code Ann. § 76-5-404 (1996).

"sexual abuse."  It was thus the common practice among the states in 1996 to continue to define rape according to its traditional meaning, at least with respect to the omission of digital penetration.

## H.    The Government's Argument

The government's primary argument on appeal is that the generic federal offense of rape in 1996 included digital penetration because the majority of states in 1996 that had "rape-analogous" sexual offenses—such as "sexual abuse" or "sexual assault"—included digital penetration in those offenses.  The government asserts that it is irrelevant that the majority of states that had an offense in 1996 specifically called "rape" did not include digital penetration in that "rape" offense.  It reasons that the generic federal offense of rape should be interpreted consistently with all "rape-analogous" state offenses that were in effect in 1996, instead of just with those offenses that were specifically called "rape."

The government's argument fails for several reasons. Foremost, it does not adequately account for the text of § 1101(a)(43)(A).  *See Esquivel-Quintana*, 581 U.S. at 396 n.3 (explaining that analysis of contemporaneous state offenses "is not required by the categorical approach" but rather simply aids statutory interpretation "by offering useful context").  As explained above, that Congress used the terms "rape" and "sexual abuse" next to each other in the same provision indicates the terms have different, distinctive meanings.

Further, in defining the federal generic offense of rape, our task is to determine what the ordinary meaning of the word "rape" was in 1996. *See Taniguchi*, 566 U.S. at 566. It is significant that the majority of states that had an offense called "rape" defined it consistent with that word's traditional, common-law meaning, while the majority of states that defined their "rape-analogous" statutes broader than common-law rape did so using different names. Those states that enacted "rape-analogous" offenses that were not actually called "rape" likely did so to avoid association with the traditional meaning of the word "rape." This shows that in 1996 the word "rape" was still commonly understood to conform to its traditional meaning.

As the Eighth Circuit stated in rejecting an identical argument, "What the government is essentially asking us to do is agree that certain 'analogous' state crimes *must* count as rape and then reverse engineer a definition to make sure they do. The problem is that we are reading a statute, not writing one. Congress said 'rape.' If it did not mean what it said, it could have passed a different statute." *Quito-Guachichulca*, 122 F.4th at 738 (citations omitted).

As did the Eighth Circuit, we reject the government's argument that Congress intended for the generic federal offense of rape to be as broad as the state "rape-analogous" offenses in effect in 1996 that proscribed digital penetration. The text of § 1101(a)(43)(A) and the common understanding of the word "rape" in 1996 establish that the generic federal definition of "rape"

does not include digital penetration.  As a result, we hold that (1) digital penetration is not included in the federal generic definition of rape, and (2) thus Barrie's D.C. Code § 22-3002(a)(1) conviction is not a categorical match for the federal generic definition of rape.[9]

## V.  OTHER ISSUES

That limited holding, however, does not completely resolve this case.  Other issues remain regarding whether Barrie is removable based on his D.C. convictions.

First, issues remain as to (1) whether, under the modified categorical approach, D.C. Code § 22-3002(a)(1) is divisible based on the alternative definitions of "sexual act" in § 22-3001(8); (2) if § 22-3002(a)(1) is divisible, which alternative definition of "sexual act" in § 22-3001(8) was the basis for Barrie's § 22-3002(a)(1) conviction; and (3) whether that definition of "sexual act" then categorically matches the federal generic offense of "rape" in § 1101(a)(43)(A).  All we have held above is that digital penetration

---

[9] We recognize that this result seems illogical.  In pleading guilty, Barrie admitted that he "forcibly penetrated her vagina with his fingers against her will," and "forcibly penetrated [her] vulva with his penis, against her will." Yet, under the Supreme Court's categorical approach, we are required to ignore Barrie's conduct and instead pretend that he was *only* convicted for the lesser act of digital penetration. *See Mathis*, 579 U.S. at 504.  The Supreme Court has required that we "close our eyes as judges to what we know as men and women." *United States v. Davis*, 875 F.3d 592, 595 (11th Cir. 2017).  Because that is what Supreme Court precedent requires, we must apply the law as it currently stands.

is not included in the federal generic definition of "rape" in § 1101(a)(43)(A).

Second, the issue remains whether Barrie was convicted of the aggravated felony of a "crime of violence." *See* 8 U.S.C. § 1101(a)(43)(F) (stating that "aggravated felony" means "a crime of violence . . . for which the term of imprisonment [is] at least one year"); 18 U.S.C. § 16 (defining "crime of violence"); *see also Talamantes-Enriquez v. U.S. Att'y Gen.*, 12 F.4th 1340, 1347–48 (11th Cir. 2021) (discussing § 1101(a)(43)(F)). This is because the government alleged and argued before the IJ that § 22-3002(a)(1) was both an aggravated felony of (1) rape and (2) a crime of violence.

Since the BIA has not addressed these issues, we exercise our discretion to remand these issues of removability to the BIA for consideration in the first instance. *See Talamantes-Enriquez*, 12 F.4th at 1348 ("When the BIA has not addressed an issue, we typically follow the ordinary remand rule, which provides that the proper course, except in rare circumstances, is to remand." (quotation marks omitted)).

Because we vacate the BIA's decision affirming the IJ's order of removal, we also do not address at this juncture the issues relating to the denial of Barrie's claims for relief from removal;

more specifically, the denial of Barrie's claim for a waiver of inadmissibility and CAT relief.[10]

## VI.  CONCLUSION

The BIA erred in its conclusion that the generic federal definition of "rape" in 8 U.S.C. § 1101(a)(43)(A) includes digital penetration and that Barrie's D.C. conviction is a categorical match to "rape" in § 1101(a)(43)(A).  We thus grant Barrie's petition for review, vacate the BIA's decision affirming the IJ's order of removal, and remand this case for further proceedings consistent with this opinion.

**PETITION GRANTED, VACATED AND REMANDED.**

---

[10] We also decline to address as unnecessary the issues raised by Barrie regarding whether (1) the BIA was bound by *Matter of Keeley*, and (2) the IJ should have considered Barrie's removability arguments when the BIA remanded the case after the first appeal.